RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT STEIN and ROBERT BECK, on behalf of themselves and all other persons similarly situated,

>*Plaintiffs-Appellants*,

*v.*

HHGREGG, INCORPORATED and GREGG APPLIANCES, INC., d/b/a hhgregg,

>*Defendants-Appellees*.

No. 16-3364

---

Appeal from the United States District Court for
the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00396—Susan J. Dlott, District Judge.

Argued: December 1, 2016

Decided and Filed: October 12, 2017

Before: MOORE, SUTTON, and WHITE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael J. O'Hara, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellants. Danuta Bembenista Panich, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Indianapolis, Indiana, for Appellees. **ON BRIEF:** Michael J. O'Hara, Megan E. Mersch, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, Peter L. Cassady, Kristen M. Myers, BECKMAN WEIL SHEPARDSON LLC, Cincinnati, Ohio, for Appellants. Danuta Bembenista Panich, Christopher C. Murray, Michelle Maslowski, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Indianapolis, Indiana, for Appellees.

MOORE, J., delivered the opinion of the court in which WHITE, J., joined, and SUTTON, J., joined in part. SUTTON, J. (pp. 21–23), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.    Defendants hhgregg, Inc. and Gregg Appliances, Inc. have a uniform compensation policy whereby their retail and sales employees, who are paid solely on the basis of commission, are advanced a "draw" to meet the minimum-wage requirements whenever their commissions fall below minimum wage.  The amount of the draw is then deducted from future earnings in weeks when the employees' commissions exceed the minimum-wage requirements.  Plaintiffs Robert Stein and Robert Beck, on behalf of themselves and all other former and current employees of defendants, brought suit claiming violations of the Fair Labor Standards Act ("FLSA") and of state law.  The district court found that defendants' compensation policy was legal, and that plaintiffs therefore could not state a claim on which relief could be granted.  The district court dismissed all of plaintiffs' federal claims, and declined to exercise supplemental jurisdiction over their remaining state-law claim. We **REVERSE** the district court's judgment dismissing plaintiffs' case, and we **REMAND** the case for further proceedings.

## I.  BACKGROUND

Defendants own and operate over twenty-five hhgregg stores across Ohio and over 220 stores across the United States, which sell appliances, furniture, and electronics.  R. 10 (Am. Compl. at ¶ 13) (Page ID #52).  Plaintiffs Stein and Beck were retail sales employees at an hhgregg store in Hamilton County, Ohio.  *Id.* at 4–5 (Page ID #51–52).  Stein, a current employee, began working at hhgregg in March 2008.  *Id.* at 4 (Page ID #51).  Beck worked at hhgregg from November 2011 until March 2015.  *Id.* at 5 (Page ID #52).

All retail sales employees at hhgregg, including Stein and Beck, are subject to a draw-on-commission policy.  *Id.* at ¶ 14 (Page ID #53).  Under this policy, all retail sales employees are paid solely on the basis of commissions.  *Id.* at ¶ 15 (Page ID #53).  However, in pay periods when an employee's earned commissions fall below the minimum wage, he or she is paid a "draw" to meet the minimum-wage requirements.  *Id.* at ¶¶ 16–17 (Page ID #53); R. 33–1, Exh.

1 (Sales Commission Plan at 1) (Page ID #315).  If an employee reports working forty hours or less in a week (a non-overtime week), "the Draw equals the difference between the minimum wage for each hour worked and the amount of commissions [actually] earned."  R. 33–1, Exh. 1 (Sales Commission Plan at 1) (Page ID #315).  If an employee works more than forty hours in one week (an overtime week), "the Draw equals the difference between an amount set by the Company (at least one and one-half (1½) times the applicable minimum wage) for each hour worked and the amount of commissions [actually] earned."  *Id.*  Draw payments are "calculated on a weekly basis."  *Id.*  An employee receives a draw only if the commissions earned that week fall below the minimum wage (in a non-overtime week) or one and one-half times the minimum wage (in an overtime week).  *Id.*

According to plaintiffs' amended complaint, employees who receive a draw are required to repay it, "typically . . . by deducting the amount of the 'draw' from commissions earned during the very next week, assuming the commissions after the deducted 'draw' repayment exceed the minimum wage obligation for that week."  R. 10 (Am. Compl. at ¶ 20) (Page ID #54).  Thus, if the weekly minimum wage were assumed to be $290, and an employee earned only $100 in commissions in one week, he would receive a draw of $190 to meet the minimum wage of $290.  However, if the following week he earned $600 in commissions, he would receive only $410, and the remaining $190 would be credited back to the company to repay the $190 draw from the previous week.  Plaintiffs allege that if the subsequent week's commissions are insufficient to repay the draw, "Defendants deduct the amount of the outstanding 'draw' from the next paycheck the employee receives for a week in which the employee's commissions minus the outstanding 'draw' exceed the applicable minimum wage."  *Id.*  An employee may be subject to discipline, including termination, if he or she receives frequent draws or accumulates too great of a draw balance.  *Id.* at ¶ 31 (Page ID #56); R. 33–1, Exh. 3 (Retail Sales Compensation-Draw Policy at 1–2) (Page ID #318–19).  At least as late as the time plaintiffs filed their amended complaint, defendants' policy stated that "[u]pon termination of employment, the [employee] will immediately pay the Company any unpaid Deficit amounts."  R. 33–1, Exh. 1 (Sales Commission Plan at 2) (Page ID #316).

Although the U.S. Department of Labor ("DOL") recognizes the draw-on-commission pay structure (referred to as "straight commission with . . . 'draws'") as a potential method of compensation for retail sales employees, 29 C.F.R. § 779.413(a)(5), the draw policy at issue here appears to be somewhat unique. First, whereas a typical[1] draw system pays a fixed amount as a draw in each pay period, *id.*, the amount of the draw paid under defendants' policy varies from week to week. Second, the fixed draw amount usually "bear[s] a more or less fixed relationship to the commission earnings which could be expected." 29 C.F.R. § 779.416(a). Defendants' policy, on the other hand, bases the draw not on expected commissions, but on the minimum wage.

Plaintiffs further allege that in addition to their sales duties, employees are required to attend mandatory trainings and conferences. R. 10 (Am. Compl. at ¶ 29 (Page ID #55). Because no commissions are earned during these times, plaintiffs allege that employees, with the knowledge and even approval of managers, worked "off the clock" to avoid incurring a draw based on the inclusion of these hours. *Id.* at ¶ 29 (Page ID #55–56). They also allege that managers approved of employees working "off the clock" to avoid increasing the amount of the draw. *Id.* at ¶ 28 (Page ID #55).

On June 15, 2015, Stein and Beck brought suit on behalf of themselves and all other current and former commissioned retail sales employees at stores owned and operated by defendants, alleging violations of the FLSA and of state law. *Id.* at ¶ 1 (Page ID #49). Specifically, plaintiffs allege that (1) defendants' draw policy violates the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and (i); (2) the draw policy encouraged hhgregg retail employees to work "off the clock" and deprived them "of earned wages and compensation in violation of §§ 206(a) and 207(a) and (i)"; (3) the draw policy improperly manipulated commissions in violation of §§ 207(a) and (i);[2] (4) defendants failed to pay overtime properly in weeks in which overtime

---

[1] The compensation systems described in 29 C.F.R. § 779.413(a) are not exhaustive of all pay systems that are permissible under the FLSA. 29 C.F.R. § 779.413(b). We cite these regulations only to understand the typical structure of a draw system.

[2] Plaintiffs have withdrawn their claim of improper commission manipulation. Appellants' Br. at 52. Because the district court declined to exercise supplemental jurisdiction over the state-law claim of unjust enrichment, the parties have not raised their state-law claim on appeal. *Id.*; R. 40 (Dist. Ct. Order at 17–18) (Page ID #466–67).

was actually worked; (5) defendants' policies and practices constituted a willful violation of the FLSA; and (6) defendants' policies and practices constituted unjust enrichment under state laws. *Id.* at ¶¶ 33–46 (Page ID #56–59).

On August 31, 2015, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 27 (Def. Mot. to Dismiss) (Page ID #207–09). The district court, relying on several DOL opinion letters, found that defendants' policy was lawful, and dismissed all of plaintiffs' federal claims. R. 40 (Dist. Ct. Order at 18) (Page ID #467). This timely appeal followed.

## II.  ANALYSIS

### A.  Standard of Review

"We review de novo a district court's decision to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012). We must take as true the non-conclusory allegations in the complaint, and determine if the complaint contains "sufficient factual matter" to support a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In general, we may not consider matters outside the pleadings in reviewing a Rule 12(b)(6) motion to dismiss unless the motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.* Although the complaint does not quote verbatim from defendant's compensation policy, the policy is referenced throughout the complaint, and appears in the record as an exhibit to the Second Declaration of Robert Beck, which was filed with plaintiffs' reply in support of their motion for conditional certification.

R. 33-1, Exh. 1 (Sales Commission Plan at 1–2) (Page ID #315–16). Because the compensation policy is central to plaintiffs' case, we will consider its language in addition to that of the pleadings to determine the facial sufficiency of plaintiffs' claims.

**B. The retail or service establishment exemption does not apply**

The district court held that defendants were exempt from overtime pay under the retail or service establishment exemption, and that plaintiffs' allegations that they were deprived of minimum wage and overtime pay therefore failed to state a claim on which relief could be granted. R. 40 (Dist. Ct. Order at 14) (Page ID #463). As an initial matter, we note that the district court erred in applying the exception to plaintiffs' claims alleging violations of the minimum-wage requirements, because the retail or service exemption relieves employers from only their overtime obligations. *See* 29 U.S.C. § 207(i). To the extent that the exemption does apply, it affects only those claims alleging violations of overtime requirements.

Section 7(i) of the FLSA exempts retail or service employees from the overtime pay requirement if (1) "the regular rate of pay of such employee is *in excess* of one and one-half times the minimum hourly rate applicable" under the FLSA, and (2) "more than half his compensation . . . represents commissions on goods or services." 29 U.S.C. § 207(i) (emphasis added). The parties agree that plaintiffs' compensation is based entirely on commissions.[3] Appellants' Br. at 6; Appellees' Br. at 55. Neither party has alleged that the draw "is actually

---

[3]The district court focused much of its analysis on "whether Plaintiffs were paid a 'bona fide commission rate' as set forth in 29 U.S.C. § 207(i)." R. 40 (Dist. Ct. Order at 6) (Page ID #455). The district court's resolution of this point was unnecessary, however, because, as stated above, the parties do not dispute that "more than half of [employees'] compensation . . . represents commission on goods and services." 29 U.S.C. § 207(i). We note that the cases on which the district court relied involved only disputes about overtime pay, where the parties disagreed about what percentage of compensation represented commission. *McAninch v. Monro Muffler Brake Inc.*, 799 F. Supp. 2d 807, 811 (S.D. Ohio 2011) ("Plaintiffs in the instant action contest only the last prong of this test. That is, Plaintiffs argue that their compensation does not constitute 'commissions earned from the sale of goods or services.'"); *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361, 1362, 1365 (N.D. Ga. 2009) (citation omitted) ("[I]n determining whether more than half of Plaintiff's compensation came from commissions, the Court must also determine whether the commissions paid to Plaintiff were the result of 'the application of a bona fide commission rate.'") As noted above, plaintiffs allege violations of both the minimum-wage and the overtime requirements. Unlike in *Lee* or *McAninch*, the issue of what percentage of compensation represents commission is not here in dispute. Although the definition of the term "bona fide commission rate" is relevant to establishing whether a given compensation plan meets the second prong of the overtime exemption, a bona fide commission plan is not synonymous with a lawful compensation plan. To the extent that the district court relied on precedent concerning the definition of bona fide commission rate, we consider those definitions to be irrelevant here, and hold that the district court erred in dismissing plaintiffs' claims on those grounds.

paid as a salary" or otherwise does not represent commissions. *See* 29 C.F.R. § 779.416(a). The overtime exemption therefore applies if "the regular rate of pay . . . is *in excess* of one and one-half times the minimum hourly rate applicable to him" under the minimum wage provisions of the FLSA. 29 U.S.C. § 207(i) (emphasis added). The "regular rate of pay" is defined as the "hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 779.419(b) (citations omitted).

The overtime exemption does not apply. The allegations contained in plaintiffs' amended complaint demonstrate only that in a normal, nonovertime week, employees are entitled to *exactly* the minimum hourly rate. Specifically, the amended complaint states that:

> [i]n a non-overtime week . . . the "draw" equals minimum wage for each hour worked minus the amount of commissions earned . . . . In weeks where the commissions earned are greater than . . . one and one-half times the minimum wage . . . the employee was simply paid commissions and no "draw."

R. 10 (Am. Compl. at ¶ 17 (Page ID #53) (emphasis added). Although we recognize that an employee could, in theory, earn commissions in excess of one and one-half times the minimum wage, the pleadings do not indicate how much plaintiffs actually earned in nonovertime weeks. In their motion to dismiss, defendants argue only that "Plaintiffs acknowledge hhgregg guaranteed them a draw *equal to at least* one-and-a-half times the minimum wage in weeks in which they worked more than 40 hours." R. 28 (Mot. to Dismiss at 13) (Page ID #222) (emphasis added). Given the facts alleged in the pleadings, we find no basis[4] for applying the overtime exemption. We therefore hold that the district court erred in dismissing plaintiffs' claims on the basis of the overtime exemption.

## C. Plaintiffs alleged sufficient facts to demonstrate that the draw policy violates the FLSA

In Count One of their amended complaint, plaintiffs claim that defendants' draw system violates §§ 206(a) and 207(a) and (i) of the FLSA. For the reasons explained below, we conclude that plaintiffs have failed to allege sufficient facts demonstrating that defendants'

---

[4]The district court did not identify any facts or allegations indicating that plaintiffs earned more than one and one-half times the minimum wage in overtime weeks. It found, without explanation, that plaintiffs' allegation that they were paid "one and one-half (1½) times the applicable minimum wage" in overtime weeks "establishes that Plaintiffs' regular rate of pay was in excess of one and one-half times the minimum hourly rate." R. 40 (Dist. Ct. Order at 6) (Page ID #455). For the reasons stated above, this is incorrect.

practice of deducting the amount of the draw from future earnings violates the FLSA. However, we also conclude that plaintiffs have alleged sufficient facts to demonstrate a violation where defendants' compensation policy holds employees liable for any unearned draw payments upon termination for any reason.

### 1. Deduction of Draws From Future Earnings

#### a. "Free and clear" regulation

The DOL regulations clearly state that when an employee earns less in commissions than he was advanced through a draw, "a deduction of the excess amount from commission earnings for a subsequent period, if otherwise lawful, may or may not be customary under the employment arrangement." 29 C.F.R. § 779.416. Nevertheless, plaintiffs argue that the deductions from commission earnings in this case are not "otherwise lawful," because defendants failed under this policy to deliver the minimum wage "free and clear" as required by 29 C.F.R. § 531.35.

The FLSA mandates that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce" a statutory minimum hourly wage. 29 U.S.C. § 206(a). The current minimum wage is set at $7.25 an hour, or $290 a week for an ordinary forty-hour workweek. *Id.* The DOL regulations require that the minimum wage be paid "finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. The "free and clear" regulation specifically provides that:

> The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

*Id.*

Plaintiffs argue that defendants failed to deliver wages "free and clear," because under the compensation policy, any draw amount paid to meet the minimum wage is deducted from future paychecks. They characterize the draw as "nothing more than a loan" that retail sales employees are then expected to repay, or arguably, "kick-back" to defendants. Appellants' Br. at

18.  Plaintiffs' claim that the draw is deducted from future paychecks is supported by the text of defendants' policy, which states:

> [t]o the extent a Sales Associate's total Draws exceed the Sales Associate's total earned commissions (the "Deficit"), the Sales Associate is liable to, and obligated to pay, the Company the amount of the Deficit.  The Company will have the right to demand the payment of, and the Sales Associate will be obligated to pay the Company, the Deficit.

R. 33–1, Exh. 1 (Sales Commission Plan at 1) (Page ID #315).  Although the policy does not specify how employees are expected to repay the company, we take as true plaintiffs' non-conclusory allegation that:

> [t]he "draw" is typically recovered by Defendants by deducting the amount of the "draw" from commissions earned during the very next week, assuming the commissions after the deducted "draw" repayment exceed the minimum wage obligation for that week.  In a week where the employee owes a "draw" back to Defendants, yet commissions are insufficient to cover the repayment, then Defendants deduct the amount of the outstanding "draw" from the next paycheck the employee receives for a week in which the employee's commissions minus the outstanding "draw" exceed the applicable minimum wage.

R. 10 (Am. Compl. at ¶ 20) (Page ID #54).

The question before us is whether recovery of the draw is an unlawful kick-back.  The term "kick-back" is not defined in either the FLSA or DOL's regulations,[5] but Black's Law Dictionary defines the term "kickback" as "a return of a portion of a monetary sum received, usu[ally] as a result of coercion or a secret agreement." *Kickback*, Black's Law Dictionary (10th ed. 2014).  Under the regulations, it would be unlawful for an employer to require an employee to return wages already "delivered to the employee." 29 C.F.R. § 531.35.  That, however, is not exactly the case here.  Under defendants' system, if an employee is paid a draw, she may keep the full amount that is paid and "delivered."  However, deductions will be made from wages *not*

---

[5]The regulations provide an instructive example of an impermissible kick-back in which employees must use their wages to purchase tools that will benefit their employer:

> For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35.

delivered, that is, from future earned commissions that have not yet been paid.   Because defendants' practice of deducting draw payments from future commission earnings does not unlawfully "'kick[]-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage *delivered* to the employee," we hold that this practice does not violate the "free and clear" regulation.  *See* 29 C.F.R. § 531.35 (emphasis added).

### b.  DOL Interpretive Materials

Our determination that this policy is lawful finds support in the DOL Field Operations Handbook, as well as several DOL opinion letters.  We recognize that these interpretations of Department regulations are "not 'subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment,'" and therefore are not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–844 (1984) (citations omitted).  *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000).  However, interpretations, opinions, and explanatory guidelines "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999) (noting the persuasive authority of the Field Operations Handbook, which is "issued by the government agency responsible for enforcement of the federal wage and hour laws").  "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

Here, the DOL Field Operations Handbook indicates that the FLSA permits employers to "credit . . . draws or guarantee payments against their minimum wage obligation when settling out the amount due employees at the end of the pay (settlement) period."  U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30b05(c)(3) (2016).  The Handbook provides several examples to illustrate permissible draw-against-commission plans, all of which assume a four-week month, a fifty-hour week, an hourly minimum wage of $3.35 and a monthly minimum wage of $670 (4 x 50 x $3.35).  *Id.*  One example, in particular, is applicable in this case:

> The employer has established payment of a weekly draw against commissions and a monthly pay (settlement) period. The salesperson draws $125 a week against earned commissions . . . . [By the first pay (settlement) date,] the salesperson has earned only $500 in commissions and is *paid* an additional $170 at the end of the pay (settlement) period to meet the total minimum wage ($3.35 x 200 [=] $670) due for the hours worked during that month or pay period. At the end of the following month, the salesperson has earned $1,000 in commissions. The employer deducts from this amount the $170 that was paid the previous month to bring the employee up to the minimum wage. The employer pays the salesperson $670 ($3.35 x 200) and carries the remaining $160 into the next month. This salesperson has also been paid in compliance with the FLSA. If the employer pays an additional amount ($170 the first month) to satisfy the minimum wage, this amount may be recovered from excess commissions earned but *not paid* in subsequent pay (settlement) periods. Similarly, commissions earned but *not paid* in a given pay (settlement) period which are in excess of the amount required to satisfy minimum wage requirements may be carried forward and applied to the minimum wage on subsequent pay (settlement) dates.

*Id.* § 30b05(c)(3)(a), (c). This hypothetical is very similar to the policy at issue here. In both scenarios, the employer pays a certain amount to the employee to "bring the employee up to the minimum wage," which is credited against future commission earnings. *Id.*

In contrast, the Field Operations Handbook also provides an example of an impermissible draw policy, which is consistent with our interpretation of the "free and clear" regulation. *See* 29 C.F.R. § 531.35. As we explained above, an employer violates this regulation when it requires an employee to pay back wages already paid and delivered. The Field Operations Handbook, using the same assumptions as the example above, provides an example of an unlawful policy:

> A salesperson is paid four weekly draws of $150 each for a total of $600 for the monthly pay (settlement) period. At the end of the month, the salesperson's commission earnings total $1,000. The employer deducts the $600 in draws from this amount and pays the remainder (or excess) of $400 to the salesperson. The following month, the salesperson is paid $600 in draws and earns no commissions. To meet the minimum wage obligation for the salesperson, the employer applies $70 from the $400 excess *earned and paid* the previous month. This practice is not in compliance with the requirements of the FLSA. Any part of a commission that is actually *paid* to the employee may not be carried forward as a credit into subsequent pay (settlement) periods.

U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30b05(c)(3)(d) (2016). The Field Operations Handbook makes clear that the DOL views defendants' practice of crediting draws against future earnings as permissible under the FLSA, so long as the employer does not deduct from wages *already paid*.

Importantly, this interpretation appears to be the longstanding position of the DOL. Defendants point to three opinion letters that express a consistent view in support of the type of compensation structure used by defendants. In 1981, the DOL considered the legality of a similar compensation plan, which paid a "subsidy" to employees in weeks when commissions fell below the minimum wage, but later credited those subsidies against future commissions in excess of the minimum wage. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1981 WL 179034 (Mar. 3, 1981). The employer sought guidance on whether this payment structure delivers the minimum wage "free and clear." *Id.* The Deputy Administrator stated, "[w]here an employer advances funds to a commission salesperson to satisfy the minimum wage requirement, this amount may be recovered from excess commissions earned in a subsequent settlement period." *Id.* Seventeen years later, the DOL again opined that a policy nearly identical to the one described in the 1981 opinion letter met the minimum-wage requirements of the FLSA. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852727 (Feb. 23, 1998). A third opinion letter issued in 2001 communicated a similar view. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2001 WL 1558951 (Feb. 14, 2001).

We find these materials to be persuasive, not only because they demonstrate that the DOL has maintained a consistent position for several decades, but also because their reasoning demonstrates that the DOL considered the legality of these provisions in light of the exact same regulation at issue here, that is, the "free and clear" regulation. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1981 WL 179034 (Mar. 3, 1981); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852727 (Feb. 23, 1998); 29 C.F.R. § 531.35. Plaintiffs argue that the district court's reliance on the opinion letters was unnecessary because the language of 29 C.F.R. § 531.35 clearly prohibits defendants' practice of deducting draws from future earnings. Appellants' Br. at 23–24. We disagree that the language is unambiguous because, as noted above, it is not clear that withholding excess commissions from unpaid

earnings in subsequent pay periods is the same as requiring repayment of wages already paid.[6]
29 C.F.R. § 531.35.

### c. Draw Policy and Overtime Violations

There are, however, limits to the persuasive power of the DOL's interpretations. First, we note that in each of the opinion letters, the DOL considered only potential violations of the minimum-wage requirements, because the employees at issue were all exempt from the overtime requirements of the FLSA. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1981 WL 179034 (Mar. 3, 1981); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1998 WL 852727 (Feb. 23, 1998); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2001 WL 1558951 (Feb. 14, 2001). Here, plaintiffs allege violations of both the minimum-wage and the overtime requirements. We hold that plaintiffs have failed to allege sufficient facts to support a claim that defendants' practice of deducting draws from future unpaid commissions violates the overtime requirements of the FLSA. Section 7 requires that "for a workweek longer than forty hours," an employer must provide "compensation for [an employee's] employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Plaintiffs allege that under defendants' compensation plan, if an employee working in excess of forty hours is unable to earn commissions at or above one and one-half times the minimum wage rate, "the 'draw' equals one and one-half (1½) times the applicable minimum wage for each hour worked minus the amount of commissions earned." R. 10 (Am. Compl. at ¶ 17) (Page ID #53). Under the allegations in the complaint, the draw payment plan compensates employees in accordance with the overtime requirements, whether through straight commissions or with the help of a draw. To the extent that plaintiffs argue that draw payments issued in overtime weeks similarly violate the "free and clear" regulation, this argument fails for the same reason that their analogous minimum-wage claim fails—plaintiffs

---

[6]Plaintiffs also cite *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6019, 2013 WL 749497, at *9 (S.D.N.Y. Feb. 28, 2013), which held that "employers may not require that their employees give any money back to them, such that an employees' [sic] resulting compensation falls below the minimum wage." We find this case unpersuasive, however, because the district court there did not consider the interpretive manuals and letters presented in this case. *Id.* at *9–10. We find nothing in *Perez* to convince us that the language of 29 C.F.R. § 531.35 is sufficiently clear to preclude our consideration of these interpretive materials.

cannot show that the policy requires a "kick-back" of wages already "delivered to the employee." 29 C.F.R. § 531.35.

## 2. Post-Termination Liability

We also note that defendants' compensation plan is distinguishable from those discussed in the opinion letters in that the policy here states that an employee is required to "immediately pay [defendants] any unpaid Deficit amounts" upon termination. R. 33–1, Exh. 1 (Sales Commission Plan at 2) (Page ID #316). The district court, in its opinion, noted the questionable legality of this policy, but granted defendants' motion to dismiss because "there have been no facts alleged demonstrating that hhgregg *enforces* that aspect of its compensation plan when employment is terminated or ended." R. 40 (Dist. Ct. Order at 13) (Page ID #462). At oral argument, defendants' counsel represented to the court that defendants have not collected and will not in the future collect any debts from any employee upon termination, and that this language is no longer in the policy.

We do not believe that defendants' assurances to the court end the inquiry. In analogous circumstances, we have focused upon the language of a written policy rather than its actual implementation, because "[s]imply because a [policy] has never been applied does not mean that the employee has not been affected by the policy." *Mich. Ass'n of Governmental Emps. v. Mich. Dep't of Corr.*, 992 F.2d 82, 86 (6th Cir. 1993). Here, the policy clearly states that "[t]he Company will have the right to demand the payment of, and the Sales Associate will be obligated to pay the Company, the Deficit." R. 33–1, Exh. 1 (Sales Commission Plan at 1) (Page ID #315). This obligation continues after termination for any reason, when the policy requires that "the Sales Associate will immediately pay the Company any unpaid Deficit amounts." *Id.* at 2 (Page ID #316). Employees subject to this policy may reasonably believe that they remain liable to hhgregg for any unearned draw payments.

The dissent argues that although such a policy may under certain circumstances violate the FLSA, plaintiffs' claim that the company violated their rights when they left the company must fail because the company never actually collected any outstanding draws after an employee was terminated. By stating the company's "right to demand the payment of" the outstanding

draw, the policy purports to hold employees liable even after termination for any reason. Even if defendants never demanded repayment in practice, an employee may believe he owes a debt to the company for which he could be made responsible at a later date. Incurring a debt, or even *believing* that one has incurred a debt, has far-reaching practical implications for individuals. It could affect the way an individual saves money or applies for loans. An individual might feel obligated to report that debt when filling out job applications, credit applications, court documents, or other financial records that require self-reporting of existing liabilities. We therefore believe that focusing on the actual written policy in this case is "more practical and realistic" than considering only how the policy assertedly is implemented. *Mich. Ass'n of Governmental Emps.*, 992 F.2d at 86.

Plaintiffs have alleged sufficient facts to support a claim that defendants' policy, as written, violates the FLSA by continuing to hold employees liable for draw payments even after termination. Under defendants' written policy, an employee who has been unable to earn sufficient commissions can be required to "immediately pay the Company any unpaid Deficit amounts" upon termination. R. 33-1, Exh. 1 (Sales Commission Plan at 2) (Page ID #316). Thus, if an individual is paid a $290 draw for a week in which she earns no commission, and is unable to earn in excess of $290 for any subsequent week, she would, upon termination, be required to return the $290 draw already paid to her. This aspect of the policy does violate the "free and clear" regulation, because it requires a repayment of wages already delivered to her. *See* 29 C.F.R. § 531.35. An individual who has gone several weeks without earning any commissions could be liable for thousands of dollars under this policy. Under these circumstances, we cannot say that the minimum wage is provided "free and clear." 29 C.F.R. § 531.35.

Although we find sufficient support in DOL interpretations that a company may lawfully credit draws against future unpaid earned commissions, we find no support for the claim that a company may demand repayment of wages already paid upon termination. The 1981 and 1998 opinion letters are specifically limited to policies which did not hold employees liable for any balance that remained outstanding after they left the company. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1981 WL 179034 (Mar. 3, 1981); U.S. Dep't of Labor, Wage

& Hour Div., Opinion Letter, 1998 WL 852727 (Feb. 23, 1998). The Field Operations Handbook similarly limits a company's ability to recoup draw payments to deductions from *future* commissions earned and not paid—it nowhere permits repayment of wages to the employer after termination. U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30b05(c)(3) (2016).

We therefore hold that plaintiffs failed to state a claim that defendants' policy of deducting draw payments from future unpaid earned commissions violates the minimum wage and overtime requirements of the FLSA. We hold that plaintiffs have alleged sufficient facts, however, to support their claim that defendants violate the FLSA by continuing to hold their employees liable for draw payments even upon termination. Accordingly, we reverse the district court's dismissal of Count One insofar as plaintiffs allege that defendants' policy of holding employees liable upon termination violates the FLSA, and remand for proceedings consistent with this opinion.

**D. Plaintiffs alleged sufficient facts to support a claim that defendants' policies and practices encouraged employees to work "off the clock" without compensation**

Plaintiffs argue that the district court erred in holding that they had failed to state a claim on which relief could be granted with regard to their "off the clock" claims.[7] Appellants' Br. at 44. Count Two of plaintiffs' amended complaint alleges that defendants encouraged plaintiffs to work "off the clock" for substantial periods of time without compensation. R. 10 (Am. Compl. at ¶¶ 35–37) (Page ID #57). In support of this claim, plaintiffs state that:

> [i]n each Store, Plaintiffs and Similarly Situated Employees often worked "off the clock" to avoid incurring such a debt to their employer. Defendants were aware of the practice, have tolerated this practice, have approved of this practice, and sometimes encouraged this practice of working "off the clock" in order to avoid a higher draw.

*Id.* at ¶ 3 (Page ID #50). In addition, plaintiffs state that defendants violated the minimum wage and overtime requirements by "requiring or coercing Plaintiffs and Similarly Situated Employees

---

[7]The district court held that plaintiffs' claim failed because they fell under the overtime exemption of § 207(i) of the FLSA. R. 40 (Dist. Ct. Order at 14–15) (Page ID #463–64). As explained above, on the basis of the amended complaint, the overtime exemption does not apply.

to work 'off the clock' for such things as required training and store meetings, or have expressly or tacitly approved such a practice." *Id.* at ¶ 4 (Page ID #50).

The FLSA requires employers to pay employees a minimum wage (currently $7.25) for every hour worked. 29 U.S.C. § 206(a). In addition, if an employee works in excess of forty hours a week, the employee must "receive[] compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The "regular rate" is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed," and is "computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate." 29 C.F.R. § 779.419. Assuming a week-long pay period, the minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage, and the overtime requirements are met where total compensation for hours worked in excess of the first forty hours equals or exceeds one and one-half times the minimum wage. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960).

Plaintiffs allege sufficient facts that, when taken as true, establish that defendants' policies and practices with regard to working "off the clock" violate the minimum wage and overtime requirements of the FLSA. Specifically, plaintiffs allege that hhgregg managers approved of, and sometimes encouraged employees to work "off the clock" to avoid incurring a higher draw. When plaintiffs' allegations are taken as true, under this practice, plaintiffs who required a draw in order to receive minimum wage were not properly compensated for all hours worked in a given week.

Defendants respond that, if plaintiffs' allegations are correct, the practice would not violate the FLSA because "by allegedly under-reporting working time in draw weeks and thereby lessening their draw payments, [plaintiffs] *increased* the amount of commission pay they subsequently received by the same amount." Appellees' Br. at 50. Therefore, "the 'off-the-clock' work [plaintiffs] allegedly performed did not deprive them of pay; it simply shifted it to a different week." *Id.*

This argument fails. Employers must actually pay the minimum wage for all hours worked in a given pay period. 29 U.S.C. §§ 206(a) & 207(a). The relevant pay period in this case is one week. *See* R. 33–1, Exh. 1 (Sales Commission Plan at 1) (Page ID #315). Defendants may not pay less than the minimum wage in one week by paying above the minimum wage in the next week. Moreover, an employee's pay is not necessarily "shifted" for hours that he never reports working. An example illustrates why defendants' statement is incorrect. Consider an hhgregg employee who expects to earn no commissions in a given workweek. After the employee works forty hours for that week, earning no commissions, his manager encourages him to work for two more hours, because they are expecting a higher volume of customers and he is more likely to earn commissions. However, because the employee has earned no commissions that week and is likely to incur a draw, the manager encourages him to work "off the clock" so that his draw for the week will equal "the difference between the minimum wage for each hour worked and the amount of commissions [actually] earned," i.e., a non-overtime week, and not "the difference between an amount set by the Company (at least one and one-half (1½) times the applicable minimum wage) for each hour worked and the amount of commissions [actually] earned," i.e., an overtime week. R. 33–1, Exh. 1 (Sales Commission Plan at 1) (Page ID #315).[8] During these additional hours, the employee makes $100 in commissions. Assuming an hourly minimum wage of $7.25 and a weekly minimum wage of $290, if the employee reports only the first forty hours of work, he is paid $290, or $100 in commissions and a $190 draw. Because he actually worked forty-two hours, he is entitled by statute to $311.75 ($290 for the first forty hours plus $7.25 x 1.5 for each of the two subsequent hours, or $21.75 for all overtime hours). In the subsequent nonovertime week, he earns $480 in commissions. He is paid $290 for the week, and the remaining $190 is deducted from commissions to repay the previous week's draw. Although he has cleared his balance, he is never compensated for the two unreported overtime hours from the week before. It is no answer to say that had he reported the hours and

---

[8]If the draw policy is applied as written, there is an additional incentive to underreport hours. Reporting an overtime week and incurring a draw equal to "the difference between . . . one and one-half (1½) times the applicable minimum wage[] for each hour worked and the amount of commissions [actually] earned" would make the employee liable to earn even *more* in the subsequent week. Assuming the weekly minimum wage is $290, if the employee were to earn no commission at all, his draw if he reported only forty hours would be $290, but his draw if he reported forty-two hours would be $456.75 (1.5 x (7.75 x 42)). Because he is liable to earn back any draws paid to him, he is more likely to opt to report forty hours, so he is only liable to the company for $290.

taken the draw, he eventually would have had to repay the draw. The law requires that he be paid for all hours worked.

Plaintiffs' amended complaint states that hhgregg's managers tolerate and at times encourage their employees to work off the clock without compensation. Plaintiffs have alleged sufficient facts to support a claim that this practice violates the minimum wage and overtime requirements of the FLSA. The district court therefore erred in dismissing Count Two of plaintiffs' amended complaint.

**E. Plaintiffs alleged sufficient facts to support a claim that defendants failed to pay overtime properly**

Plaintiffs allege that "Defendants failed to properly compensate Plaintiffs and Similarly Situated Employees at the rate of one and one-half times the lawfully required regular rate for all weeks in which overtime was actually worked." R. 10 (Am. Compl. at ¶ 41) (Page ID #58). In a workweek that exceeds forty hours, an employee is entitled to "compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Plaintiffs have made sufficient allegations to support their claim that defendants violated the FLSA by failing to pay overtime properly. Specifically, they allege that defendants failed to compensate their employees for all hours worked by knowingly encouraging "off the clock" work. R. 10 (Am. Compl. at ¶¶ 22–32) (Page ID #54–56). The district court therefore erred in dismissing Count Four of plaintiffs' amended complaint.

**F. The district court erred in dismissing plaintiffs' remaining claims.**

Finding that none of plaintiffs' federal claims had survived, the district court dismissed Count Five, alleging willful violations of the FLSA. The district court's dismissal of the above federal claims, however, was in error. Because the plaintiffs' claims should have survived as discussed above, and because plaintiffs allege that defendants' managers were aware of and tacitly or knowingly approved of the practices at issue, plaintiffs' final federal claim of willful violations of the FLSA should not have been dismissed.

The district court declined to exercise supplemental jurisdiction over the state-law claim for unjust enrichment in Count Six "because no federal claims remain[ed]." In light of our reinstatement of the federal claims, we remand this claim as well for further consideration.

### III. CONCLUSION

Based on the foregoing, we **REVERSE** the district court's judgment dismissing plaintiffs' action, and **REMAND** the case for further proceedings consistent with this opinion.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SUTTON, Circuit Judge, concurring in part and dissenting in part. I agree with the Court that hhgregg's draw-on-commission policy for its active retail workers comports with the Fair Labor Standards Act. And I agree with the Court that a draw-on-commission policy may under certain circumstances violate the Act when employees leave the company. But I part ways with the Court in its conclusion that the company violated the rights of the named plaintiffs when they left the company. I thus would affirm in full Judge Dlott's decision to dismiss the claims.

According to the plaintiffs, hhgregg may not "claw back" draws it has paid to satisfy its minimum wage obligations when an employee leaves the company with a draw balance. As a general matter, I agree, as did the district court and as do my colleagues. The problem is that hhgregg did not do this and does not do it. As Judge Dlott correctly observed, the amended complaint contains "no facts" alleging hhgregg *actually* demanded that these employees (or any others) repay a draw after they left the company. R. 40 at 13. Trying to sidestep that conclusion, the plaintiffs point to two allegations: (1) "[u]nder such [draw] policy **and practice**, if there is an outstanding draw at the point the Similarly Situated Employee leaves employment with Defendants, the employee is obligated to repay the outstanding draw amount to the Defendants," and (2) "[u]pon termination of employment for any reason, Defendants continue to hold Plaintiffs and Similarly Situated Employees liable for any unpaid 'draw' amount." Appellants' Br. 33.

But the plaintiffs concede that no such policy was applied to them. Asked whether the named plaintiffs had been asked to repay any outstanding draw, their counsel could respond only that "[i]t is [hhgregg's] *policy* to collect those once they leave." Oral Arg. at 5:30–33. Plaintiff Robert Beck had "left owing a draw," but "[t]he company did not make him pay it." *Id.* at 5:15–22. After admitting "[t]here had been no effort . . . by the company to collect the debt that [Beck] left with when he had an excess draw," counsel again argued that "we allege in the complaint that it is [hhgregg's] policy, because it's stated specifically in the policy, that they

collect those debts." *Id.* at 7:19–39; *see also id.* at 7:40–46 (conceding that hhgregg did not collect the named plaintiffs' unpaid draws, but "they *can* collect it").

The Court reasons that a provision in the company's employment policy violates the Act even if the company did not apply it to the plaintiffs or for that matter anyone else. That's why the Court must resort to hypotheticals: that "an employee . . . *can be* required" to repay the company, and "*could be* liable for thousands of dollars." Maj. Op. 15 (emphasis added).

Oral argument cleared up any doubts. Defense counsel declared in open court that "the company never *has* collected that money." Oral Arg. 18:53–59. And it acknowledged it never will:

> Q.  Can you say on behalf of the company in open court that . . . they're not going to collect [any outstanding draws]?
> A.  Yes, Your Honor. . . .
> Q.  For anybody? Not just these plaintiffs, but for anybody?
> A.  Correct, correct. . . . Never have they. There is nothing in the record, in this complaint, to suggest that, actually, the company has ever *tried* to collect. . . .
> Q.  But to be clear, I'm asking you on behalf of the company to say they're not going to, in the future, ever collect one of these "debts" . . . when someone leaves.
> A.  Yes. Absolutely, Your Honor. And in fact, that language . . . [is] no longer in the policy.

*Id.* at 21:16–56.

That's all we should need to know to affirm Judge Dlott's decision. So far as the amended complaint goes, there is no plausible factual predicate for this claim. The plaintiffs had no answer to the point at oral argument, and none has emerged since.

The plaintiffs' "off-the-clock" overtime allegations do not fill this void. No one here claims that working off-the-clock amounts to a *per se* violation of the FLSA. Plaintiffs must allege more: that they were paid less than time and a half for overtime hours worked. *See* 29 U.S.C. § 207(a)(1). In the absence of any such plausible allegations in the complaint, the claim necessarily fails.

In the final analysis, the plaintiffs have not alleged that hhgregg sought repayment of their outstanding draws after they left the company, and they have not alleged that they were paid less than time and a half for overtime hours worked. In the absence of such facts, their claims remain on the wrong side of "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). With the named plaintiffs claims' dismissed, the district court lacked jurisdiction over any similarly situated plaintiffs. *See Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529, 1531–32 (2013). Judge Dlott properly granted hhgregg's motion to dismiss in its entirety.

For these reasons, I respectfully dissent.