VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 382-6-20 Cncv



| Mitchell vs. NBT Bank, N.A. |
| --- |

### DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Christie Mitchell was a loan officer employed by Defendant NBT Bank. Per the parties' agreement, she was a non-exempt employee paid on a commission basis. NBT paid her a draw against commissions; it then calculated commissions on a four-week cycle and credited those commissions retroactively to the weeks in which the loans closed. NBT then subtracted the draw from Ms. Mitchell's gross commissions and paid her the net amount. Ms. Mitchell claims that this arrangement violated her right, under federal and state wage and hour laws, to be paid overtime above and beyond the amount of her gross commissions. The parties have cross-moved for summary judgment.[1] For the reasons below, the court denies Ms. Mitchell's motion and grants NBT's.

The material facts are not in dispute. For a period of over three years, Ms. Mitchell worked for NBT as a mortgage loan originator. SUMF ¶ 1. For this entire time, she was compensated pursuant to a series of agreements. SUMF ¶ 2, Exhibit B. On a biweekly basis, NBT paid her a draw based on an hourly wage. SUMF ¶ 5. In addition, every four weeks, NBT paid her the difference between the draw and her gross commissions earned for the period. *Id.* If gross commissions were not sufficient to cover the draw (or in the few instances when she reported overtime, draw plus overtime), the deficit carried over to the next four-week period. *Id.* In addition, in the few weeks during her employment when she reported working more than 40 hours, NBT paid overtime, which it calculated first at 1.5 times Ms. Mitchell's hourly wage at the time and then, when her compensation was trued up to reflect commissions earned, at 1.5 times the hourly rate plus .5 times the rate derived by dividing hours worked into her gross commissions for the week. D's SUMF ¶¶ 17–21. NBT then added this figure to Ms. Mitchell's draw and subtracted the resulting sum from gross commissions to determine the net amount due. *Id.* ¶ 22.

---

[1] Ms. Mitchell seeks only partial summary judgment, in the form of a determination that NBT's practice violates the law, leaving damages for subsequent determination.

Order
382-6-20 Cncv Mitchell vs. NBT Bank, N.A.

Page **1** of **8**

Ms. Mitchell now claims that she worked many more overtime hours than she reported. She claims further that she is entitled to be paid for those hours on top of her gross commissions for the weeks in question. NBT argues that she is not entitled to be paid overtime on top of commissions. It further disputes that she worked the claimed overtime hours; indeed, it argues that her proof of those hours is so weak that there is a complete failure of proof as to damages.

In resolving this dispute, it is important to emphasize what the parties do not dispute. This is not a breach of contract case; there is no allegation that NBT's practice of subtracting the draw and overtime it paid from gross commissions to determine net amounts due violated any agreement between the parties. Rather, the parties agree that the calculation of overtime pay is governed by the Federal Fair Labor Standards Act ("FLSA") and regulations promulgated thereunder—specifically, 29 C.F.R. § 778.119.[2] There also appears to be no serious dispute that NBT made its calculations of overtime pay pursuant to the formula established by regulation. The dispute, instead, is whether NBT must add that pay to Ms. Mitchell's gross commissions or could properly effectively net it out, along with her base wages, such that she could never earn more than her gross commissions. In short, the question is whether NBT's practice violates the FLSA.

The FLSA does not directly address the compensation plan at issue here. *See* 29 U.S.C. ch. 8. Rather, the statute requires simply that an employer pay a minimum wage, *id.* § 206(a), and when its employees work more than forty hours per week, that it pay overtime calculated based upon the employee's "regular rate," *id.* § 207(a). The regulations promulgated under the FLSA, however, expressly contemplate an employer's paying its employees in whole or in part on a commission basis, and go on to dictate how to calculate overtime pay for such employees. *See* 29 C.F.R. §§778.117–22. Section 778.109 provides that the "regular rate" is an employee's rate per hour, including commissions. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek . . . , and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek." 29 C.F.R. § 778.118.

The regulations also account for situations in which the employer cannot determine the amount of commissions until a later time:

---

[2] As noted above, Ms. Mitchell claims violation of both federal and state wage and hour laws. In her motion papers, however, she acknowledges that "[b]ecause Vermont overtime wage laws and federal overtime wage laws are substantially similar, the analysis of federal law should apply to this claim under Vermont law as well." Mot. for Partial Summ. J., 7.

> If the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek, the employer may disregard the commission in computing the regular hourly rate until the amount of commission can be ascertained. Until that is done he may pay compensation for overtime at a rate not less than one and one-half times the hourly rate paid the employee, exclusive of the commission. When the commission can be computed and paid, additional overtime compensation due by reason of the inclusion of the commission in the employee's regular rate must also be paid. To compute this additional overtime compensation, it is necessary, as a general rule, that the commission be apportioned back over the workweeks of the period during which it was earned. The employee must then receive additional overtime compensation for each week during the period in which he worked in excess of the applicable maximum hours standard. The additional compensation for that workweek must be not less than one-half of the increase in the hourly rate of pay attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standard in that workweek.

29 C.F.R. § 778.119. Ms. Mitchell's focus on this calculation distracts her from the real question here: not how much overtime pay is required but instead what is the base pay to which overtime must be added to produce total statutorily mandated minimum compensation.

The answer to that question is found in a straightforward analysis not of the regulation but of the statute itself. As noted above, the FLSA imposes two requirements: first, that the employer pay a minimum wage, 29 U.S.C. § 206; and second, that it pay overtime under certain circumstances, *id.* § 207. An employer of course may pay more than minimum wage, and it may pay more than minimum wage plus overtime as calculated per statute, but it may not pay less. The statute requires that overtime be calculated based on a "regular rate" that in turn is calculated based on the sum of all earned, i.e., gross compensation. *Id.* § 207(e). The flaw in Ms. Mitchell's analysis is in equating the requirement to use gross compensation in calculating the "regular rate" with a requirement to pay that gross compensation as some sort of base, to which overtime is then added. Nowhere in the statute or regulations does such a requirement appear, either expressly or by inference. In short, it stretches both statute and regulation too far to suggest that for any employee, the minimum wage requirements of § 206 are somehow modified by the overtime requirements of § 207. *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 534 (6th Cir. 2017) (holding that employer did not violate analogous statutory section's overtime requirements when draw was netted out of commission). NBT's commission compensation plan more than meets the minimum wage requirements; the question is whether it complies strictly with the overtime requirements.

Order
382-6-20 Cncv Mitchell vs. NBT Bank, N.A.

Page **3** of **8**

Contrary to Ms. Mitchell's suggestion, there is nothing in either statute or regulation that categorically precludes NBT's practice of netting out base pay and statutorily mandated overtime, plus any negative running balance in this regard, from her gross commissions in determining the remaining balance due her in any pay period.[3] As long as the combination of base pay plus overtime does not exceed the amount of gross commissions, the practice of capping compensation at gross commissions does not offend the statute. This is an arithmetic exercise that can be completed easily enough once the actual number of hours worked and gross commissions earned have been determined for any given pay period. If during the first year of her employment, for example, Ms. Mitchell had worked 55 hours in a week in which her gross commissions totalled only $600, payment of those commissions alone would fall short of meeting the statutory obligation.[4] On the other hand, if in the same week her gross commissions totalled $700, payment of those commissions alone would surpass the statutory minimum.[5,6]

NBT argues that Ms. Mitchell's evidence is insufficient to allow any finder of fact to determine, even by a preponderance, that she did in fact work the unreported overtime hours she now claims. In this regard, the burden is well established: "An employee who brings suit under [the FLSA] for unpaid minimum wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). Where, as here, the employer has not kept overtime records, "an

---

[3] The court notes that the sole authority cited in Ms. Mitchell's motion papers that remotely addresses an employer's practice of netting base pay and overtime pay from commissions earned to determine its total payment obligation is *Sullivan v. Sleepy's LLC*, 482 Mass.227 (2017). That case, however, is distinguishable on multiple grounds, and so provides no support for Ms. Mitchell's arguments. *See* NBT's Reply Brief, 6-7.

[4] To determine the total amount of compensation required in any week, the FLSA requires that overtime be added to base pay. In cases such as this, when the commission calculation and allocation cannot be completed until after the end of a pay period, the calculation for determining the total amount of overtime compensation due in any week is dictated by 29 C.F.R. § 778.119: first, at the end of the pay period, the employer must pay overtime at 1.5 times the hourly rate derived from the employee's base pay for the period; then, when commissions are allocated, "[t]he additional compensation for that workweek must be not less than **one-half of the increase in the hourly rate** of pay attributable to the commission for that week **multiplied by the number of hours worked in excess of the applicable maximum hours standard** in that workweek." (Emphasis added.) Thus, calculation of statutorily required compensation can be expressed mathematically as follows: statutorily required compensation (SC) equals base pay (BP) plus 1.5 times base pay divided by 40 times overtime hours (OT), plus one-half times overtime hours  times the difference between base pay divided by 40  and gross commissions divided by 40 plus OT—i.e., $SC = BP + 1.5OT * (BP/40) + .5OT * ((GC/(OT + 40)) – (BP/40)) + .5OT$. Thus, in the example above, statutorily required compensation would equal $631.82—$400 + $225 (1.5 * 15 * $400/40) + $6.82 (.5 * 15 * (($600/55) – ($400/40)). Thus, SC > GC; i.e., statutory violation

[5] $400 + $225 (1.5 * 15 * $400/40) + $20.45 (.5 * 15 * (($700/55) – ($400/40)) = $645.45. Thus, SC < GC; no statutory violation.

[6] For illustrative purposes, the court attaches as Appendix 1 a spreadsheet showing base pay and statutorily-required gross pay, comprising base play plus overtime calculated per the formula established by 29 C.F.R. § 778.119, for a range of hypothetical work weeks in Ms. Mitchell's first year of employment at NBT. On the spreadsheets, the column headings show the commissions earned in a hypothetical week, while the row headings show the number of hours worked. Each cell then shows the amount of gross pay due that week. If statutorily-required compensation exceeds commissions, the cell appears in red; if commissions are sufficient to cover statutorily-required compensation, the cell appears in black.

employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. And as NBT properly notes, "it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011).

That is precisely what Ms. Mitchell has done here. In discovery, she provided a spreadsheet showing what she characterized as a conservative estimate of overtime hours worked over a three-year period from June 2017 through May 2020; the spreadsheet also shows commissions earned and Ms. Mitchell's calculation of overtime pay owed during the same period.[7] NBT argues, however, that "in order '[t]o plead a plausible FLSA overtime claim, [a] [p]laintiff[] must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.' " NBT's Reply Brief, 4–5 (quoting *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). Ms. Mitchell argues that her spreadsheet and supporting deposition testimony amply meet this standard. Opp. to Def.'s Cross Motion, 11–15.

The court need not resolve this dispute, however, because even were Ms. Mitchell's "conservative estimate" proven, it would fall far short of demonstrating a violation of the FLSA. The reader will recall that to establish a violation, in the context of this case, Ms. Mitchell would have to prove that her base pay plus statutorily required overtime exceeded her gross commissions.[8] While that is theoretically possible, examination of Ms. Mitchell's spreadsheet (which the court attaches for ease of reference as Appendix 2), in conjunction with the undisputed facts as to the amounts of her base pay and gross commissions earned over the same period, demonstrates that even if she proved the hours claimed and calculated the overtime pay due as reflected on the spreadsheet, she would fall over $200,000 short of establishing a violation. During the period shown on her spreadsheet, Ms. Mitchell's

---

[7] As will be discussed below, those calculations greatly overstate the amount of overtime pay owed.

[8] It bears emphasis that the calculations shown in footnotes 2 and 3 and the spreadsheet attached as Appendix 1 have been performed on a hypothetical weekly basis, for illustrative purposes only. As noted above, per the parties' agreement, NBT's practice was to carry forward any deficits resulting from shortfalls between draw and overtime paid and commissions earned, until such time as commissions earned in a particular period were sufficient to erase the negative balance and reset the balance to zero.

> Draw/Commission MLO's will receive a biweekly draw against future commissions based on a $30,000 annual payout. Draw accounts will be reconciled on a quarterly basis coinciding with the end of three (3) 4-week commission periods, with a final year-end true-up. MLO's will receive minimum wage payment requirements if commissions/draw is insufficient in meeting these requirements in a weekly pay period.

Exhibit B to Ms. Mitchell's Statement of Undisputed Material Facts, p. 1. Ms. Mitchell has not challenged this practice, which in any event does not offend the statute. As long as, at the end of any true-up period, NBT had paid commissions sufficient to cover all statutorily-required base pay and overtime, its practice satisfied the statutory requirement.

gross commissions (and therefore her gross pay) totalled $541,873.81. NBT's Resp. to P.'s SUMF and Separate SUMF, ¶ 42.[9] Her base pay totalled $68,243.32.[10] Based on her (mis)calculation, she was owed $240,322.25 for the overtime hours shown on the spreadsheet. $68,243.32 plus $240,322.25 equals $308,565.57, meaning based on her own estimates and calculations, NBT paid Ms. Mitchell $233,308.24 more than the FLSA required.

Ms. Mitchell's estimates, of course, are not undisputed, and they are, by her testimony, conservative. Nevertheless, it bears observing (as foreshadowed above) that her resulting calculation of overtime owed grossly overstates the product that results if the calculation is performed correctly, as set forth in the regulation. Examination of the mathematics behind Ms. Mitchell's calculations reveals three critical errors; first, instead of dividing commissions earned by total hours worked to derive the "regular rate," as required by the regulation, she divided by 40; second, instead of subtracting her base hourly rate from the "regular rate" to derive the hourly overtime rate, she used the (miscalculated) "regular rate"; and third, instead of first determining overtime pay due at 1.5 times the base pay rate and then adding that to one-half the product of overtime hours and overtime rate to yield the total amount of overtime due, she simply multiplied the (miscalculated) "regular rate" by 1.5. *See* 29 C.F.R. § 778.119 ("The additional compensation for that workweek must be not less than **one-half of the increase in the hourly rate** of pay attributable to the commission for that week **multiplied by the number of hours worked in excess of the applicable maximum hours standard** in that workweek.") (emphasis added). The court has undertaken the correct calculation,[11] as applied to the

---

[7] NBT's amply supports its assertion that this fact is undisputed. *See* NBT's Resp. to P's SUMF and Separate SUMF, ¶43; Fabrizzi Aff., ¶ 42. While Ms. Mitchell disputes this fact, she has not done so properly. Her sole basis for dispute is not an affidavit of her own or citation to the record; instead, she suggests that NBT, having access to the underlying pay records, "should rely on those documents, rather than Mr. Fabrizi's [sic] affidavit, to prove amounts paid." P's Statement of Disputed Material Facts, ¶ 43. Rule 56(c), however, does not include any sort of best evidence rule, and Mr. Fabirzzi's affidavit demonstrates that he is competent to testify as to the contents of the pay records, which themselves are clearly business records. *See* V.R.C.P. 56(c)(4). Hence, the court deems this fact undisputed. *See* V.R.C.P. 56(e)(2); *Alpstetten Ass'n v. Kelly*, 137 Vt. 508, 514 (1979) ("Once a claim is challenged by motion for summary judgment, accompanied by an affidavit or affidavits or other documentary evidence sufficient to call into question the existence of the factual basis for the claim, the person advancing the claim may not rest upon his mere allegations, but must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts in issue.").

[10] Base pay is set forth in the various compensation agreements that comprise Exhibit B to Ms. Mitchell's Statement of Undisputed Material Facts, and is confirmed on her spreadsheet. Through the second week of December 2017 (28 weeks), that was $400 per week, for; for the last two weeks of December 2017 and all of 2018 (54 weeks), it was $420 per week; for all of 2019(52 weeks), it was $444 per week; and for the 21 weeks of 2020 shown on the spreadsheet, it was $576.92 per week. This yields the following calculation: (28 * $400) + (54 * $420) + (52 * $444) + (21 * $576.92) = $68, 243.32.

[11] The court notes that while determining the inputs into the formula—hours worked, base pay rate, and commissions earned and paid—is the role of the factfinder, interpreting the statute and regulations to derive the formula is unquestionably a question of law for the court. Equally, if the inputs are undisputed, the calculation is a mechanical function that the court (or anyone else with a calculator) is more than capable of performing. In other words, if the base pay, number of hours worked, and commissions earned are all established beyond dispute, it does not require a jury to punch those numbers into a calculator.

overtime hours and commissions earned shown on Ms. Mitchell's spreadsheet, and the result is dramatic: instead of $240,322.25, the proper calculation yields a total of $75,225.10.

The court does not share its own spreadsheet in this regard because it relies on data that have not been established to be undisputed. Instead, as Appendix 3 to this decision, it shares another spreadsheet, again based on Ms. Mitchell's claims—as shown Appendix 2—as to the hours she worked and the amounts of commissions she earned over the three years in question. This spreadsheet shows, for each of the weeks in those three years, her base hourly rate (weekly draw divided by 40), the overtime hours she claims, and the commissions she earned. Before calculating overtime pay, though, it goes further and assumes the impossible—that Ms. Mitchell dedicated every hour of the week (168 hours) to work. The resulting calculation demonstrates that even if Ms. Mitchell never slept for three years and did nothing else but work, the total overtime due would be $471,821.75—still $1,808.74 short of establishing a violation of the FLSA.

This calculation obviates the necessity of assessing the quality of Ms. Mitchell's evidence, as suggested by the caselaw on which NBT relies. Simply stated, once Ms. Mitchell's base pay and gross commissions have been established—as is unequivocally the case here—it matters not how many hours Ms. Mitchell worked. Rather, unless she somehow managed to suspend the laws of physics and the limitations of the human body, there is no conceivable data set on which Ms. Mitchell could prevail in this case.

## ORDER

As a matter of law, NBT's practice of netting base pay and overtime out of gross commissions to determine total compensation paid is not invalid on its face. Accordingly, the court denies Ms. Mitchell's motion for summary judgment. Ordinarily, whether the practice is invalid as applied to Ms. Mitchell's actual circumstances—hours worked and commissions earned—would be a question of fact. The analysis above demonstrates, however, that there is no plausible scenario under which Ms. Mitchell can prove an FLSA violation. It matters not that there may yet be genuine disputes as to whether she did work unreported overtime, or how many those hours might have been; there are not enough hours in the day for her to have earned enough overtime to push her total statutorily required compensation beyond the amount of the gross commissions she was paid. Thus, on the undisputed facts—the amounts of her base pay and commissions earned—Ms. Mitchell cannot prove that NBT's

practice, as applied, violated the FLSA. Rather, on those facts, Ms. Mitchell was paid more than the statute requires. Thus, the court grants NBT's motion. The case is dismissed with prejudice.

_____
Samuel Hoar, Jr.
Superior Court Judge