NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0394n.06

Case No. 20-2210

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>KRISTA JONES,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>INTERLAKE STEAMSHIP COMPANY;<br>MARINE ENGINEERS BENEFICIAL<br>ASSOCIATION, DISTRICT 1-PCD,<br><br>    Defendants-Appellees.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Aug 23, 2021<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN</td></tr>
</table>

BEFORE: SILER, MOORE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. Plaintiff Krista Jones ("Jones") was a cook for Interlake Steamship Company ("Interlake"). After she missed her ship's departure, Interlake terminated her. Jones attempted to grieve her termination through her union, Marine Engineers' Beneficial Association District #1-PCD ("MEBA"), but MEBA confirmed that the collective bargaining agreement governing her employment did not bar Interlake from terminating her "without just cause." Jones filed suit against both Interlake and MEBA (collectively, "Defendants") for violations of various labor laws. The district court dismissed all of Jones' claims. For the following reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings. We also **DENY** Jones' motion to supplement the record.

I.

Plaintiff Krista Jones alleges that she worked for Interlake beginning in 2011. In 2018, Interlake promoted her to Chief Steward, which is the company's job title for lead cook. Jones alleges that on May 29, 2019, she spent all day cooking meals on the *Stewart J. Cort* ("the *Cort*"), which was set to sail from Superior, Wisconsin to Chicago. She alleges that the *Cort* had a posted sailing time of 6:00 p.m. but that a wheelsman informed her at 5:40 p.m. that the *Cort* would not sail for another ninety minutes. Jones alleges that the wheelsman agreed to "give her a one-hour notice call" so that she could go ashore to buy a wall clock for the ship. (R. 28 at PageID 100). Jones alleges that when she returned at 6:54 p.m., the *Cort* was pulling away from the dock. Jones alleges that she called her supervisor and that the supervisor assured her that "this happens all the time, it is not a big deal, and people don't get fired for it." (*Id.* at PageID 101). However, the following day, Interlake terminated Jones, citing crew member complaints about her performance.

At the time of her termination, Jones was a member of MEBA, and the terms of her employment with Interlake were subject to a collective bargaining agreement ("CBA") and incorporated side letter agreement ("Side Letter"), which Interlake and MEBA entered into in 2013. The CBA required Interlake to demonstrate "just cause" before terminating members of MEBA (the "just cause provision"), but the Side Letter modified the CBA so as to exclude Masters and Chief Stewards from several provisions of the CBA, including the just cause provision.

Jones alleges the following chain of events following her termination: On May 31, 2019, she spoke with Mark Gallagher ("Gallagher"), MEBA's contract representative, and Tracy Burke ("Burke"), MEBA's branch agent. Jones explained what had happened and requested that MEBA file a termination grievance on her behalf. Gallagher told Jones that Burke wielded the authority to grieve, and Burke told Jones that her case was "closed" because she missed the ship. (*Id.* at

PageID 103). Jones called Gallagher again on June 4, 2019. Gallagher told Jones that the captain and crew had issues with her performance.

After mailing $25 to MEBA, Jones received a copy of the CBA and Side Letter on or about June 28, 2019. At this point, Jones realized that MEBA had agreed with Interlake that MEBA would not process termination grievances for Chief Stewards.

Gallagher referred Jones to Jason Callahan ("Callahan"), MEBA's vice president. After some back and forth, Jones asked Callahan on August 5, 2019 to pursue arbitration for her termination. Callahan immediately responded that Jones had missed the grievance deadline and that she would not prevail at arbitration. Callahan did not mention the Side Letter. On the same day, MEBA directed Jones to fill out a grievance form, which Jones promptly did.

Sometime between August 5 and 17, Jones appealed Callahan's decision to MEBA's District Executive Committee ("DEC"). Jones emailed MEBA President Marshall Ainley ("Ainley") on August 17 and 19; she told Ainley that she had requested a termination grievance from Gallagher on May 31 and requested from Ainley "all Interlake-MEBA correspondence emails pertaining to her case." (*Id.* at PageID 104–05). Ainley acknowledged the request but did not send anything to Jones.

In an August 30, 2019 letter to Jones, DEC reported the results of its investigation and concluded, among other things, that Interlake fired Jones because of her poor performance and failure to follow instructions. MEBA also informed Jones that the Side Letter specifically exempted Jones from grieving her termination.

On November 26, 2019, Jones filed suit in Michigan state court against Interlake and MEBA (collectively, "Defendants"). On December 17, 2019, Defendants removed the action to the district court. Jones then filed an amended complaint on February 26, 2020. In the amended

complaint, Jones alleges that Interlake and MEBA violated the Labor Management Relations Act ("LMRA"). Specifically, Jones alleges (1) a hybrid Section 301 claim against both Interlake and MEBA, asserting that Interlake terminated her without just cause and that MEBA violated its duty of fair representation by failing to adequately represent Jones in pursuing a grievance against Interlake; (2) a standalone claim that MEBA violated its duty of fair representation to Jones based on its handling of her termination ("standalone duty of fair representation claim"); (3) a claim that MEBA violated 29 U.S.C. § 414 ("Section 414") by making her pay $25 for a copy of the CBA; and (4) claims that both Defendants violated Michigan contract law.

Both MEBA and Interlake moved separately to dismiss the amended complaint for failure to state a claim. MEBA also moved, in the alternative, for summary judgment. Jones also moved for summary judgment. On August 5, 2020, a magistrate judge recommended dismissal of all Jones' claims, except for her claim under Section 414. Jones objected only to the magistrate judge's recommendations that the hybrid claim and standalone duty of fair representation claim be dismissed.

On November 30, 2020, the district court dismissed all of Jones' claims against both Defendants. As to the hybrid Section 301 claim, the district court concluded that Jones failed to state a claim upon which relief could be granted, because Jones could not point to any terms in either the CBA or Side Letter to show that Interlake breached its contractual duties by firing her. The district court also held that Jones' standalone duty of fair representation claim against MEBA was time-barred and that there was no basis for tolling the limitations period. The district court also rejected the magistrate judge's recommendation as to the Section 414 claim, concluding that nothing in the statute prohibited MEBA from charging a reasonable copying fee for a printed copy

of the CBA.  Finally, the district court concluded that federal law preempted any state law claims Jones had attempted to plead.

Jones then filed this appeal, contesting the district court's dismissal of the first three claims.

II.

We review *de novo* a district court's decision dismissing a complaint for failure to state a claim under Rule 12(b)(6).  *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion to dismiss, we must "construe the plaintiff's complaint liberally, in [the] plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

"In reviewing a motion to dismiss, the Court 'may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

The district court appears to have functionally addressed only Defendants' motions to dismiss but also "conclude[d] that both defendants are entitled to dismissal *or* summary judgment on all claims[,]" without relying on, much less citing to, any documents or exhibits that are not referenced in the pleadings.  (R. 63 at PageID 477) (emphasis added).

Discovery had yet to conclude before Defendants filed their motions.  Indeed, Jones claims that *no* discovery had occurred in this case before MEBA and Interlake filed their motions.

Because Jones had no opportunity to present all pertinent material, the district court should not have granted summary judgment to Defendants. *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). We therefore review the district court's decision only as granting Defendants' motions to dismiss and not their motions for summary judgment.

III.

Although Jones herself seems to concede in her brief that the just cause provision of the CBA did not apply to her,[1] she claims that the district court erred by dismissing her hybrid Section 301 claim. Section 301 of the LMRA permits federal courts to hear "[s]uits for violation[s] of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Section 301 "encompasses 'suits by and against individual employees as well as between unions and employers.'" *Swanigan v. FCA US LLC*, 938 F.3d 779, 784 (6th Cir. 2019) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976)). Suits filed under Section 301 by employees are known as hybrid claims, because the employee "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Swanigan*, 938 F.3d at 784 (citation omitted). An employee's hybrid claim must fail if the employee "cannot satisfy *both* prongs of that test[.]" *Id.* (emphasis in original).

"In construing a collective-bargaining agreement, courts apply 'traditional rules of contract interpretation as long as their application is consistent with federal labor policies.'" *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors, LLC*, 612 F. App'x 803, 807 (6th Cir. 2015) (quoting *Moore v. Menasha Corp.*, 690 F.3d 444, 450-51 (6th Cir. 2012)). Moreover, "'[a] collective bargaining agreement is not limited solely to the specific provisions of

---

[1] *See* Appellant Br. at 5 ("The side letter excludes cooks and captains from wage negotiation and just-cause protection of the grievance/arbitration procedure, though other MEBA members did have those benefits.").

the basic labor contract formally executed by the parties, but it may also include . . . written side agreements and oral understandings.'" *Plunkett v. Smurfit-Stone Container Corp.*, 247 F. App'x 604, 607 (6th Cir. 2007) (quoting *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1079 (9th Cir. 2002)).

Jones' hybrid claim fails on the first prong, because the CBA and Side Letter, when read together, make clear that Chief Stewards are exempted from just cause protection under the CBA and cannot use the CBA's grievance procedure to challenge termination of employment. The CBA's Management Rights Clause permits Interlake to "suspend[], discharge[e], or otherwise discipline[]" employees so long as it is in compliance with the rest of the CBA. (R. 33-1 at PageID 199). Article VI(d) of the CBA places limits on Interlake's ability to terminate employees by requiring that Interlake "cannot discipline or discharge any Officer covered by this Agreement *without just cause*." (*Id.* at PageID 202) (emphasis added). However, the Side Letter enumerates the only provisions of the CBA that apply to Chief Stewards, and Article VI(d) is not among them. In relevant part, the Side Letter states as follows:

> It is agreed that the Company will employ a Master and a Chief Steward (Officers) on all vessels covered by the August 1, 2013 Collective Bargaining Agreement (Agreement), simultaneously executed herewith, between the Parties. It is further agreed that *only* Articles II Union Membership, V No Strikes/No Lockouts, VIII Family Leave Vacation Benefits, X Sailing Season Bonus, XI Transportation, XIII Continuity of Service, XVI MEBA Benefits Plans, excluding the MEBA Training Plan and XVII Effective Date & Duration *shall apply*.

(R. 32 at PageID 178) (emphasis added). The Side Letter also provides that the grievance procedures in Article VI of the CBA "*shall apply only* to alleged violations of VIII Family Leave Vacation Benefits, X Sailing Season Bonus, XI Transportation, XIII Continuity of Service, and XVI MEBA Benefit Plans." (*Id.*) (emphasis added). The applicable contractual documents are thus unambiguous in stating that Chief Stewards are not entitled to just cause protection, nor can

they invoke the CBA's grievance procedures to contest termination of employment. Accordingly, Interlake did not breach any contractual obligations to Jones by firing her, even if it may have lacked just cause to do so.

Jones nevertheless contends the district court failed to consider Interlake's past practices in its enforcement of the CBA. Specifically, Jones references nine alleged instances of Interlake crew members who "missed sailings" yet were not fired. (Appellant Br. at 10). Further, Jones argues that "there is no specific rule or CBA provision about missing the ship" and that, in the past, Interlake issued only "[a] slap on the wrist, not permanent discharge" for such infractions. (*Id.* at 43). Jones relies on *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-81 (1960), where the Supreme Court explained that "[g]aps [in collective bargaining agreements] may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement." But there is no "gap" to fill in this case. Instead, Jones asks the Court to rewrite the terms of the CBA and Side Letter so that she is covered by the just cause provision. This we cannot do. Even if Interlake might have in the past granted just cause protection to Chief Stewards or chosen not to fire employees who missed their scheduled ship departure time, the CBA and Side Letter did not *require* Interlake to exercise that discretion as to Jones. In the instant case, Interlake was bound only by the clear language of the CBA and Side Letter, neither of which extended the just cause provision to Jones.

Because Jones fails to allege that Interlake breached the CBA or Side Letter, she cannot prevail on the first prong of the hybrid claim test, and we need not consider the second prong of the test. *See Swanigan*, 938 F.3d at 786 ("For without a plausible allegation that [the employer]

violated a specific provision of the collective-bargaining agreement, plaintiffs' § 301 claim fails as a matter of law.").[2]

IV.

Jones also brings a claim that MEBA independently breached its duty of fair representation to her based on its conduct between May 30, 2019—when Interlake terminated her—and August 30, 2019—when DEC denied her appeal. The district court dismissed this claim, holding that it was time-barred. We disagree with the district court.

"A union breaches its duty of fair representation when its actions or omissions are arbitrary, discriminatory, or in bad faith." *DeShetler v. FCA US, LLC*, 790 F. App'x 664, 669 (6th Cir. 2019). A claim that a union has breached its duty of fair representation is subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-70 (1983); *DeShetler*, 790 F. App'x at 672. "In general, a claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (quotations and alterations omitted). "This determination is an objective one, and the actual knowledge of [the claimant] is not determinative." *DeShetler*, 790 F. App'x at 670 (citation omitted).

---

[2] Although she cites no authority to suggest that hybrid claims can proceed absent a showing that an employer has breached a contract, Jones nevertheless contends that Interlake can still be held liable under Section 301 based on MEBA's alleged breach of duty of fair representation. To this end, Jones argues that "Interlake is well-counseled" and thus "knew or should have known that the [S]ide [L]etter to which it agreed enabled a [duty of fair representation] breach." (Appellant Br. at 41). However, Jones has not offered any legal authority suggesting that the quality or quantity of Interlake's legal representation should have any bearing on the outcome of her claim. Jones also cites to two cases—*Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944) and *Cent. of Georgia, R. Co. v. Jones*, 229 F.2d 648 (5th Cir. 1956), in which the Supreme Court and Fifth Circuit, respectively, invalidated racially discriminatory terms in collective bargaining agreements. Those holdings have since been codified as part of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000E-2(a), (c) (prohibiting both employers and labor organizations from discriminating on the basis of an employee's "race, color, religion, sex, or national origin."). Jones seems to contend that *Steele* and *Central of Georgia* support her position that Interlake is treating her unequally in comparison to employees not exempted from the just cause provision. However, unlike the plaintiffs in those cases—or as might otherwise be alleged by a Title VII plaintiff—Jones has not claimed that the CBA or Side Letter contain an *illegal* contract term that discriminates against her based on any protected status.

The district court concluded that Jones' claim against MEBA was premised solely on MEBA's *negotiation* of the Side Letter—an event that occurred long before Jones alleges that she formally joined the union in March of 2018.[3] Therefore, the district court held that Jones could have known that MEBA and Interlake agreed to the Side Letter as soon as March of 2018 and that the limitations period expired sometime in the fall of 2018, more than a year before Jones filed suit.

However, Jones' duty of fair representation claim against MEBA accrued on the "date on which [she] knew or should have known of the *union's final action*"—not the formation of the CBA or Side Letter. *Robinson*, 987 F.2d at 1239 (quoting *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1560 (11th Cir. 1986)) (emphasis added). In this case, MEBA's final action—the DEC's denial of Jones' appeal—occurred on August 30, 2019. That is when Jones' duty of fair representation claim against MEBA accrued. *Cf. id.* (concluding that Robinson's breach of contract action against employer and fair-representation claim against union accrued when the deadline for requesting arbitration passed without union action, not when Robinson joined union or started work for employer).

Generally speaking, a claim that a union breached its duty of fair representation by negotiating a CBA provision should be brought within six months of the negotiation date. *See Ratkosky v. United Transp. Union*, 843 F.2d 869, 873 (6th Cir. 1988). However, that general rule cannot apply to Jones' case, because she formally joined MEBA six years *after* the CBA and Side Letter were negotiated. Jones, moreover, challenges far more than MEBA's negotiation of the contents of the CBA and the Side Letter in 2013. In the amended complaint, Jones challenges

---

[3] Among the many inconsistencies in her filings, Jones states in her appellate brief that "[s]he became an actual MEBA member in 2016." (Appellant Br. at 5). However, because it does not change the outcome, we will assume—solely for purposes of deciding whether she filed her claim within the limitations period—that March 2018 is the date in which Jones became a member of MEBA.

"MEBA's negotiation of the side letter in 2013, *as well as its invocation of it in 2019.*" (R. 28 at PageID 106) (emphasis added). Additionally, Jones alleges, among other things, that MEBA (1) "fail[ed] to provide [her] with grievance documents"; (2) "refus[ed] to grieve and arbitrate her termination;" and (3) "arbitrarily and perfunctorily refuses to represent [cooks] as to wages, safety, disparate treatment of similarly situated employees, and other fundamental terms and conditions of employment." (*Id.* at PageID 106). Simply put, most of the conduct that Jones alleges as the basis of her claim falls within the six-month limitations period. As such, we conclude that the district court erred by dismissing this claim as untimely.

As for the merits of this claim, we conclude that Jones has sufficiently alleged that MEBA failed its duty to represent her. The question is not simply whether the just cause provision applied to Jones but rather whether the union treated her arbitrarily, discriminatorily, or in bad faith. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "Each of these wrongs is mutually independent." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003).

On its face, the Side Letter suggests arbitrariness. It is not apparent from the amended complaint, the CBA, or the Side Letter as to why MEBA would negotiate a just cause carveout for only Masters and Chief Stewards. Without any other information, we cannot make any inferences as to MEBA's justification for creating these distinctions among union members, especially when those members appear to pay the same dues. All that we can glean from the amended complaint is that the carveout appears to have been made "without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998).

Jones has also sufficiently alleged that MEBA acted in bad faith. As mentioned above, Jones alleges 1) procedural deficiencies in MEBA's handling of her grievance, 2) that multiple MEBA representatives communicated conflicting information about whether the grievance

procedures applied to her and whether she missed internal deadlines, and 3) that MEBA improperly charged her a $25 fee for a printed copy of the CBA and Side Letter.

Of course, there may well be good reason as to why MEBA negotiated with Interlake to treat various groups of employees differently, and MEBA might be able to justify its actions in how it handled Jones' termination. However, that is exactly the kind of evidence that should be developed in discovery and resolved at summary judgment, not on the limited record before us now.

In sum, we conclude that the district court erred by dismissing Jones' standalone duty of fair representation claim against MEBA as untimely. We further conclude that Jones has provided sufficient factual allegations to state a plausible claim on that issue.

V.

We also hold that the district court erred by dismissing Jones' 29 U.S.C. § 414 claim. In doing so, we reject MEBA's contention that Jones has not sufficiently pleaded a Section 414 claim. We further conclude that the claim, as alleged in the amended complaint, is plausible on its face.

In the amended complaint, Jones states that:

59.     MEBA's refusal to grieve and arbitrate [Jones'] termination, and its requirement that she pay for a copy of the CBA were arbitrary and perfunctory, and violations of its duty of fair representation.

(*Id.* at PageID 106). Although Jones does not reference Section 414 at all in the "Claims" section of the amended complaint, she does allege in the facts section of the amended complaint that she received a copy of the CBA and Side Letter on June 28, 2019 after mailing $25 and flags "Compare 29 USC 414" in a footnote. (*Id.* at PageID 103). Jones' amended complaint is hardly a model of clarity, but her allegations—when coupled together—sufficiently demonstrate that she has pleaded

that MEBA violated Section 414 by refusing to give her a copy of the CBA and Side Letter until she paid $25.

> As to the merits of the claim,  Section 414 reads, in relevant part, as follows:

> It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement.

29 U.S.C. § 414.

The district court held that Section 414 does not entitle a union member to a copy of a collective bargaining agreement *free of a modest printing charge*.  However, the district court's conclusion contradicts the Office of Labor-Management Standards' (OLMS) manual's interpretation of § 414.  *See* OFF. OF LAB.-MGMT. STANDARDS, MEMBERS' RIGHTS § 110.410 (Jan., 5, 2017), https://www.dol.gov/agencies/olms/compliance-assistance/interprative-manual/100-member-rights ("[T]he right to a copy of the contract under [§ 414] is unqualified and the union may not condition it upon payment of a fee however small."); *see also id.* § 110.420 ("The Secretary or corresponding principal officer of a labor organization is under a duty to forward a copy of the collective bargaining agreement to any employee upon request *and may not charge for copies, no matter how reasonable a proposed charge may seem*.") (emphasis added); *id.* § 110.510 ("Section 102 in Title I of the Act authorizes 'any person' to bring a civil action in a district court of the United States to protect rights secured by 'this title.'").

Although OLMS's manual is not binding, it is persuasive, and we conclude that is the best available authority on the issue before us. That authority carries even greater weight here, where no published Sixth Circuit precedent compels us to conclude otherwise. Moreover, "interpretations, opinions, and explanatory guidelines 'do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 531–32 (6th Cir. 2017) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). At this early stage of the litigation, we conclude that Jones has stated a plausible Section 414 claim against MEBA, and, accordingly, we reverse the district court's dismissal of that claim.

VI.

Finally, we address Jones' motion to supplement the record. On April 13, 2021, a motions panel of this Court denied Jones' motion as to three exhibits she sought to include in the record but referred the motion to us for consideration of the fourth exhibit Jones sought to include—Interlake's Answer to her complaint in a companion case that she voluntarily dismissed. Because at this stage of the proceedings we need look only within the four corners of the amended complaint to decide whether Jones has sufficiently alleged her claims, supplementing the appellate record with her answer in a voluntarily dismissed companion case is not pertinent to our decision here. Accordingly, we deny Jones' motion to supplement the record.

VII.

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Jones' hybrid claim against MEBA and Interlake. However, we **REVERSE** both 1) the district court's dismissal of Jones' standalone duty of fair representation claim against MEBA and 2) the district court's

dismissal of Jones' Section 414 claim against MEBA and **REMAND** for further proceedings.[4]  We

also **DENY** Jones' motion to supplement the record.

---

[4] We also agree with the district court that LMRA § 301 preempts Jones's state-law claims that depend on the meaning of the CBA.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).  Further, although, Jones stated in the amended complaint that she was entitled to reimbursement for the clock under the CBA, she has not identified a provision of the CBA that entitles her to reimbursement, and the Court could not identify one.  As such, we conclude that Jones cannot proceed on this claim.