**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0053n.06

**No. 09-2183**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jan 24, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **LINDA EVERSON**, named as "Linda (Sonte) Everson," aka Sonte Everson, | ) ) ) | |
| *Plaintiff-Appellee*, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| **CALHOUN COUNTY, et al.**, | ) ) | **O P I N I O N** |
| *Defendants-Appellants*. | ) ) ) | |

BEFORE:    BOGGS, COLE, and CLAY, Circuit Judges.

**COLE, Circuit Judge.**  In this 42 U.S.C. § 1983 action for First Amendment retaliation, Defendant-Appellant Gary Picketts appeals on qualified immunity grounds the district court's order granting in part and denying in part his motion to dismiss and alternative motion for summary judgment.[1]  For the following reasons, we **AFFIRM** the judgment of the district court.

---

[1]Defendant Calhoun County appealed the district court's determination that it was not entitled to sovereign immunity, but withdrew its appeal of this issue at oral argument.

## I.  BACKGROUND

### A.  Factual History

*1.  The Police Report & Initial Investigation of Graham*

In September 2005, Plaintiff-Appellee Linda Everson reported to the Calhoun County Sheriff's Office that, on December 16, 2004, her then-boyfriend Officer Doug Graham of the Battle Creek Police Department forcibly sodomized her during an otherwise-consensual sexual encounter. She stated that she had broken up with Graham and, unsure how to proceed, confided in friends, a counselor, and her physician about the sexual assault before finally deciding to file a police report.

Calhoun County Detective Guy Picketts handled the investigation into Graham's conduct. He interviewed Everson; several of Everson's friends and coworkers in the police department, all of whom confirmed that Everson reported being sexually assaulted by Graham; and Everson's doctor.  He also interviewed Graham, who denied that the sodomy occurred and suggested that Everson filed the report out of spite when she found out that he was marrying another woman. Picketts interviewed Everson's friend Sheri Lemonious as well.  Although Picketts reported in 2005 that Lemonious said Everson described the sodomy as consensual, Lemonious attested in 2009 that she told Picketts the opposite.  Everson alleges that Picketts failed to interview several important witnesses during his investigation.

Picketts submitted a report of his investigation to the Calhoun County Prosecutor's Office, which recused itself on conflict-of-interest grounds.  In January 2006, the Branch County prosecutor reviewed Picketts's report and declined to prosecute Graham for sexual assault.

### 2. *Everson's Speech*

Upset by the decision not to prosecute, Everson publicly criticized Picketts loudly and repeatedly, accusing him of not doing his job and being "just part of the good ole boy system." She mentioned her complaints to colleagues in law enforcement, at least one of whom relayed her statements to Picketts. Everson also met with Picketts's boss on August 16, 2006, to initiate a formal complaint against Picketts and sent a letter to the Calhoun County prosecutor on August 31, 2006, asking him to take action about her concerns regarding Picketts's investigation of Graham.

### 3. *Picketts's Investigation & Arrest of Everson*

Picketts began documenting Everson's comments in a new investigative report—this time against Everson. On August 22, 2006, Picketts interviewed Ethel Fitzpatrick ("Mrs. Fitzpatrick"), Everson's former friend, who stated that Everson had told her that the sexual assault had never occurred. Picketts did not confront Everson about the allegations, and eight days later, he requested an arrest warrant for Everson for the felony of filing a false police report. Everson alleges that Picketts opened the investigation against her before he interviewed Mrs. Fitzpatrick. Everson also alleges that Picketts lied about the first time he met Mrs. Fitzpatrick. Keith Fitzpatrick ("Mr. Fitzpatrick"), Mrs. Fitzpatrick's husband, asserts that at some point Picketts came to their house, told them that he had a personal dispute with Everson, and spoke with Mrs. Fitzpatrick at length and in private. Mr. Fitzpatrick attested that he could not remember whether the in-home meeting took place before or after the August 22, 2006 interview. But he also stated that he had never seen Picketts before the in-home meeting, and both Fitzpatricks were present for the August 22, 2006 interview.

Calhoun County did not recuse itself from the case against Everson, but rather charged her with filing a false police report. After a preliminary hearing, the Michigan district court found probable cause that Everson had committed the crime and bound her over to the circuit court for trial. The circuit court quashed the bind-over and dismissed the case for lack of evidence. Everson was then rearrested on the same charges, and the case was transferred to Kalamazoo County. On February 1, 2008, the Kalamazoo County Prosecutor dismissed all charges against Everson "in the best interests of justice."

### B. Procedural History

Everson filed a complaint against Calhoun County, the prosecutor, and Picketts (collectively, "Defendants") under § 1983, alleging that their actions (1) violated her equal protection rights; and (2) constituted illegal retaliation for the lawful exercise of her First Amendment rights. In response, Defendants filed a motion to dismiss and, in the alternative, a motion for summary judgment. After oral argument, the district court issued an order (1) dismissing the equal protection claim; (2) dismissing the retaliation claim against the prosecutor on absolute prosecutorial immunity grounds; (3) denying the motion in all other respects as to Picketts; and (4) denying the motion in all other respects as to Calhoun County without prejudice to renewal of the motion after the close of all discovery. Picketts filed this appeal, alleging that the district court erred in failing to dismiss all claims against him on qualified immunity grounds.

## II. DISCUSSION

### A. Standard of Review

This court reviews a district court's denial of summary judgment on qualified immunity grounds *de novo*. *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006). "We may only review the denial of qualified immunity to the extent that the 'appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law.'" *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (quoting *Gregory*, 444 F.3d at 742). The defendant must "be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009).

### B. Analysis

In determining whether qualified immunity applies, this court employs a two-step test, considering (1) whether, viewing the allegations in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). We have discretion to undertake the steps in either order. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

It is clearly established that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a prima facie First Amendment retaliation claim, Everson must establish (1) protected speech; (2) injury as a result of defendant's actions; and (3) causation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Picketts first argues that Everson's allegations do not constitute a prima facie retaliation claim because they fail to establish a lack of probable cause, an element of causation. He is correct that § 1983 claims for retaliatory prosecution and arrest fail as a matter of law if the defendant had probable cause. *See Hartman*, 547 U.S. at 261-62 (*Bivens* claim for retaliatory prosecution); *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) (retaliatory arrest). Probable cause exists when an officer has reasonably trustworthy information sufficient to warrant a prudent person in believing that a suspect has committed a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). In determining whether probable cause existed in this case, we examine the totality of the circumstances from the perspective of the arresting officer at the time of the arrest. *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008). In § 1983 actions, the existence of probable cause is a jury question unless only one reasonable determination is possible. *Id.* (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)).

In this case, there are genuine disputes of material fact about whether Picketts intentionally changed Lemonious's statement in his report, spoke privately with Mrs. Fitzpatrick in her home at length before she gave her formal statement, and influenced the content of Mrs. Fitzpatrick's statement. Viewing the facts in the light most favorable to Everson, a reasonable jury could find that, at the time Picketts sought an arrest warrant for Everson, the information he had collected against her was not reasonably trustworthy. Because more than one reasonable determination as to probable cause is possible, it is therefore appropriate to allow the case to proceed to trial.

Picketts's argument that this court should accept the prosecutor's and state court's findings of probable cause as evidence that probable cause existed is inapposite. Because these probable

cause determinations were based only on the evidence that Picketts included in his report—which did not describe the circumstances, as alleged by the plaintiff, surrounding Lemonious's and Mrs. Fitzpatrick's statements—we do not find them probative to the issue of whether Picketts had sufficient reasonably trustworthy information at the time of the arrest.

Picketts also contends that the district court's finding that genuine issues of material fact exist was erroneous because it relied on a series of unreasonable adverse inferences and omitted a number of relevant facts. But the "contention that the district court erred in finding a genuine issue of fact for trial is *not* the type of legal question which we may entertain on an interlocutory basis." *Gregory*, 444 F.3d at 743. Although this court has recognized an apparent exception "'where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false,'" *Moldowan*, 578 F.3d at 370 (quoting *Wysong v. Heath*, 260 F. App'x 848, 853 (6th Cir. 2008)) (internal quotation marks omitted), that exception does not apply here. The district court noted the following disputed facts, among others: (1) when Picketts opened his investigation into Everson; (2) whether Lemonious told Picketts that Everson said she had not been raped; and (3) when and how Mrs. Fitzpatrick surfaced as a witness. All of these facts are material to the existence of probable cause. These facts are also genuinely in dispute: each party answers these questions differently, each party's allegations of fact are supported by witness statements, and no objective evidence makes one party's allegations obviously false. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (finding no genuine dispute of material fact where video evidence blatantly contradicted the plaintiff's allegation that he was driving carefully). Because the district court's finding of genuine

issues of material fact was not blatantly and demonstrably false, we lack jurisdiction to undertake

further review in this regard.

### III.  CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court denying

Picketts's motion for summary judgment.