RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARK B. BLACKWELL,

        *Plaintiff-Appellee*,

    *v.*

LISA NOCERINI; RYAN STRONG; FINLEY CARTER,

        *Defendants-Appellants*.

No. 24-1186

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:21-cv-11712—Shalina D. Kumar, District Judge.

Decided and Filed: December 16, 2024

Before: SUTTON, Chief Judge; BUSH and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Marcelyn A. Stepanski, Anne McClorey McLaughlin, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., Farmington Hills, Michigan, for Appellants. Timothy E. Galligan, TIMOTHY E. GALLIGAN PLLC, Clarkston, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge. After Mark Blackwell criticized the city manager of a small Michigan city, the manager complained about him to the police. Two officers convinced a prosecutor to charge Blackwell with stalking. But a judge acquitted him. Blackwell then sued the manager and officers for violating the First Amendment by inducing this prosecution in retaliation for his political speech. The district court held that his complaint alleged enough facts to rebut the city officials' qualified-immunity defense at the pleading stage. The officials now

appeal.  We agree that Blackwell plausibly pleaded that the officials sought to prosecute him in retaliation for his speech and without probable cause that he had committed a crime.  We also reject the officials' premature efforts to bolster their defense with outside-the-complaint evidence.  We thus affirm.

I

Because this case reaches us at the pleading stage, we must accept the allegations in Blackwell's complaint as true.  *See Rudd v. City of Norton Shores*, 977 F.3d 503, 507, 511 (6th Cir. 2020).  We summarize the facts relying solely on those allegations, keeping in mind that the evidence developed in discovery may refute them down the road.  *See id.* at 507.

In 2018, many people complained about the "divisive and hostile" work environment for public employees in the City of Wayne, Michigan.  Compl., R.1, PageID 4.  Because the poor environment had led to low morale and high turnover, the City hired a human-resources expert to investigate the complaints.  *Id.*  This expert allegedly confirmed much of the concerns.  His findings pointed the fault at Wayne's City Manager: Lisa Nocerini.  *Id.*, PageID 5–6.  She allegedly showed favoritism toward some employees and a lack of respect toward others.  *Id.*

Blackwell, a Wayne resident, obtained the expert's report.  *Id.*, PageID 3, 6.  He began to call for Nocerini's termination during the public-comment period of City Council meetings.  *Id.*, PageID 6.  Unhappy with this criticism, Nocerini allegedly tried to convince Wayne's then-existing police chief to charge Blackwell with a crime.  *Id.*, PageID 7.  This police chief refused. *Id.*

In December 2018, however, the chief resigned.  *Id.*  Nocerini convinced the City Council to appoint Ryan Strong as the interim chief.  *Id.*

At a City Council meeting in January 2019, Blackwell reiterated that many city employees had resigned due to morale issues and again called for the City Council to fire Nocerini.  *Id.*, PageID 7–8.  Nocerini responded by renewing her efforts to get the police to charge Blackwell.  *Id.*, PageID 8.  She told Chief Strong about two alleged incidents from 2016. During the first, Blackwell watched Nocerini and "may have taken photos" of her while she

publicly campaigned for a tax increase to support the police and fire departments. *Id.* During the second, Blackwell followed Nocerini's car for a few blocks as she drove to city hall. *Id.*, PageID 9. Apart from these two incidents, Nocerini also told Strong that Blackwell often loitered with others in the city hall's parking lot after City Council meetings. *Id.* Nocerini allegedly never reported these things to the police until after the January 2019 meeting at which Blackwell criticized her. *Id.*, PageID 8–10.

Because Strong sought Nocerini's support to become the permanent police chief, he asked Lieutenant Finley Carter to investigate Blackwell. *Id.*, PageID 8, 10. Carter discussed Nocerini's claims with other city personnel but could find no additional evidence of wrongdoing. *Id.* Carter decided to recommend charges anyway. *Id.* At the urging of Nocerini and Strong, he asked the Wayne County Prosecutor's Office to file a criminal complaint against Blackwell. *Id.*

In March 2019, prosecutors charged Blackwell with disturbing a lawful meeting and with stalking. *See* Mich. Comp. Laws §§ 750.170, 750.411h. Yet the prosecution dismissed the disturbing-a-meeting charge before trial. Comp1., R.1, PageID 12. And a state court found Blackwell not guilty of the stalking charge after a bench trial. *Id.* The court concluded that Blackwell had not done "anything out of the norm" or "outside city property" and that Nocerini could not reasonably have felt "emotionally distressed" from his conduct. *Id.*

On the heels of his acquittal, Blackwell brought this suit against Nocerini, Strong, Carter, and the City of Wayne under 42 U.S.C. § 1983. *Id.*, PageID 1, 3. Blackwell alleged that the three officials had violated the First Amendment by pursuing the prosecution in retaliation for his criticism of Nocerini. *Id.*, PageID 12–14. He also alleged that the officials had violated the Fourth Amendment (by unreasonably seizing him) and the Fourteenth Amendment (by depriving him of equal protection). *Id.*, PageID 14–16. Blackwell lastly asserted a claim against Wayne under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Compl., R.1, PageID 16–17.

The City and its officials moved to dismiss the complaint. In support, they attached various exhibits to their motion. Blackwell consented to the dismissal of his claims under the

Fourth and Fourteenth Amendments.  But he argued that he stated a free-speech claim actionable under the First Amendment.

The district court sided with Blackwell.  It refused to consider the exhibits attached to the motion to dismiss.  It then held that the complaint stated a retaliation claim under the First Amendment and that qualified immunity would not protect the officials if Blackwell could prove his allegations.  The City and its officials moved for the district court to reconsider this ruling.  It refused.

II

Nocerini, Strong, and Carter (whom we will refer to collectively as the "City Officials") now appeal the district court's order denying their motion to dismiss.  We can reach the merits of their arguments only if we have jurisdiction over that order.  *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017).  And although neither party raises jurisdictional concerns, we have an independent obligation to ensure that jurisdiction exists.  *See id.*

Our jurisdiction depends on two sets of rules: (1) those governing the decisions that parties may appeal and (2) those governing the time limits for these appeals.  Start with the first set of rules.  Circuit courts have jurisdiction over "all final decisions" of the district courts.  28 U.S.C. § 1291.  The Supreme Court has interpreted the phrase "final decisions" in § 1291 to cover not just rulings that end a case but also preliminary orders that conclusively resolve an issue collateral to the main claims in the litigation.  *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009).  And the Court has long held that its "collateral-order" doctrine allows state actors to immediately appeal decisions denying qualified immunity—even though these decisions do not terminate the case in the district court.  *See Chaney-Snell v. Young*, 98 F.4th 699, 708 (6th Cir. 2024) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985)).

This collateral-order doctrine applies here.  The district court's decision rejecting the City Officials' motion to dismiss denied their request for qualified immunity.  The court's qualified-immunity decision thus counted as "final" within the meaning of § 1291, and this statute gives us jurisdiction to review the decision in an immediate appeal.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 671–75 (2009); *Crawford v. Tilley*, 15 F.4th 752, 758–60 (6th Cir. 2021).

Yet the City Officials did not take an immediate appeal of this order. Rather, they took a detour by first filing a motion for reconsideration. They asked the district court to reconsider its denial of their motion to dismiss under Local Rule 7.1(h)(2)(A) of the Eastern District of Michigan's Local Rules. And they appealed only after the court denied this motion. Does this second order denying their motion to reconsider the rejection of their qualified-immunity defense *itself* count as a collateral order that they may appeal? Some courts have answered "no" to this question and refused to allow immediate appeals of denials of motions for reconsideration even when the underlying order denied qualified immunity. *See Hanson v. Shubert*, 968 F.3d 1014, 1018–19 (9th Cir. 2020); *Powell v. Miller*, 849 F.3d 1286, 1288–89 (10th Cir. 2017); *Lora v. O'Heaney*, 602 F.3d 106, 111–12 (2d Cir. 2010); *Fisichelli v. City Known as Town of Methuen*, 884 F.2d 17, 18–19 (1st Cir. 1989); *cf. Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 589 (6th Cir. 2014); *Klein v. Long*, 275 F.3d 544, 549–50 (6th Cir. 2001). But we need not resolve this question here. The City Officials' notice of appeal clarified that they sought to appeal only the order denying their *motion to dismiss*—not the order denying their *motion for reconsideration*.

This fact brings us to the second set of jurisdictional rules that this case implicates. Civil parties normally must appeal from the relevant "judgment, order or decree" within 30 days. 28 U.S.C. § 2107; Fed. R. App. P. 4(a)(1)(A); *see Ortiz v. Jordan*, 562 U.S. 180, 188–89 (2011). The Supreme Court has treated this statutory time limit as a restriction on the jurisdiction of appellate courts. *See Bowles v. Russell*, 551 U.S. 205, 209–13 (2007). This rule ostensibly poses a problem for the City Officials. The district court denied their motion to dismiss (and request for qualified immunity) on August 16, 2023. But they did not appeal until months later on March 6, 2024.

That said, the Federal Rules of Appellate Procedure may save the City Officials' appeal. Appellate Rule 4 explains that the 30-day limit to appeal a judgment does not begin to run if a party files a timely motion "to alter or amend the judgment under Rule 59" of the Federal Rules of Civil Procedure. Fed. R. App. P. 4(a)(4)(A)(iv). Civil Rule 59, in turn, says that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Can a motion for reconsideration of an *order* denying qualified immunity qualify as a motion to alter or amend the *judgment* under Rule 59(e)? Yes, the word "judgment"

in the Civil Rules includes "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Because the City Officials could appeal from the order denying qualified immunity, it counts as a "judgment" under Rule 59(e). *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 (1st Cir. 2005); *Abdulwali v. Wash. Metro. Area Transit Auth.*, 315 F.3d 302, 304 (D.C. Cir. 2003). Many courts thus have found that a state actor who timely files a Rule 59(e) motion to alter an order denying qualified immunity need not appeal that denial until after the district court resolves the Rule 59(e) motion. *See Springer v. Albin*, 398 F. App'x 427, 432 (10th Cir. 2010); *Lora*, 602 F.3d at 110; *Mangieri v. Clifton*, 29 F.3d 1012, 1015 n.5 (5th Cir. 1994); *Roque-Rodriguez v. Lema Moya*, 926 F.2d 103, 106 (1st Cir. 1991); *see also Fairley v. Fermaint*, 482 F.3d 897, 901 (7th Cir. 2007). This logic also adheres to the Supreme Court's related instructions in the criminal context: that the time to appeal an immediately appealable order does not run until a district court resolves a timely motion for reconsideration of that order. *See United States v. Ibarra*, 502 U.S. 1, 6–7 (1991) (per curiam); *United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam).

These principles would suggest that the City Officials timely appealed the order denying their motion to dismiss. They filed their motion for reconsideration on August 30, 2023—well within Rule 59(e)'s 28-day window to seek to alter or amend the August 16 order denying qualified immunity. The district court also did not deny this motion until February 22, 2024. And the City Officials appealed on March 6—well within the 30-day window to appeal the underlying judgment after the denial of the Rule 59(e) motion. *See* Fed. R. App. P. 4(a)(1)(A), (4)(A)(iv).

This analysis leaves one last jurisdictional hurdle. Technically, the City Officials labeled their motion for reconsideration as filed under the Eastern District of Michigan's Local Rule 7.1(h)(2)(A)—not Civil Rule 59(e). We have traditionally treated motions for reconsideration under this local rule as analogous to motions to alter or amend a judgment under Rule 59(e). *See Quatrine v. Berghuis*, 751 F. App'x 885, 888 (6th Cir. 2018) (per curiam). So we have also traditionally concluded that a motion for reconsideration under Local Rule 7.1 (like a motion under Rule 59(e)) delays the time for appeal when the movant asks the court to reconsider an appealable order. *See Waid v. Snyder*, 2019 WL 4121023, at *1 (6th Cir. Feb. 19, 2019).

But a potential problem now exists with this reasoning. In 2021, the Eastern District of Michigan amended its Local Rule 7.1 to make clear that "[p]arties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b)" and that the district "court will not grant reconsideration of such an order or judgment under" the local rule. E.D. Mich. Loc. R. 7.1(h)(1). After this change, parties in the Eastern District of Michigan may file motions for reconsideration only of "non-final orders" that do not terminate a case. E.D. Mich. Loc. R. 7.1(h)(2). We thus have held that a party who wrongly filed a motion to alter a *final* judgment under Local Rule 7.1 (rather than Civil Rule 59(e)) could not rely on Appellate Rule 4(a)(4)(A) to delay the time to appeal that judgment. *See Miller v. William Beaumont Hosp.*, 121 F.4th 556, 557–58 (6th Cir. 2024). *Miller*'s conclusion rendered an appeal from an order granting summary judgment untimely when a party filed it more than 30 days after that summary-judgment order (even if within 30 days of the order denying the request for reconsideration under Local Rule 7.1). *See id.*

Yet *Miller*'s logic does not reach this appeal. The order denying the City Officials' motion to dismiss was not a "final order[] or judgment[]" under Local Rule 7.1(h)(1). Rather, we read the word "final" in this local rule (unlike the word "final" in § 1291) consistent with its ordinary meaning to cover only an order completing the case. The order on appeal here did not end the case; it allowed the case to proceed past the pleadings. Local Rule 7.1(h)(2)(A) thus allowed the City Officials to move for reconsideration of this non-final order. And we will continue to treat a *properly filed* motion under this local rule like any other "time tolling" motion for reconsideration. *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 206 (6th Cir. 1990). For non-final orders that a party may appeal under the collateral-order doctrine, these motions delay the running of the 30-day clock until the district court disposes of them. *See id.*; Fed. R. App. P. 4(a)(4)(A)(iv). The City Officials thus timely appealed the order denying their motion to dismiss.

III

On the merits, we review the district court's denial of a motion to dismiss de novo. *See Rudd*, 977 F.3d at 511. The City Officials raise both procedural and substantive objections to the district court's decision that Blackwell stated a retaliatory-prosecution claim under the First

Amendment.  They first challenge the court's refusal to consider the exhibits they attached to their motion to dismiss.  They next challenge the court's conclusion that Blackwell's complaint included enough allegations to overcome their qualified-immunity defense.

A. Did the district court properly disregard the outside-the-complaint exhibits?

The City Officials attached three exhibits to their motion to dismiss: Carter's police report; a timeline of events that Nocerini drafted; and the criminal complaint against Blackwell.  They argue that the district court should have used this evidence to evaluate the sufficiency of Blackwell's retaliatory-prosecution claim.  We disagree.

When deciding whether a complaint fails "to state a claim upon which relief can be granted," a court should typically limit itself to the well-pleaded allegations within the complaint's four corners.  Fed. R. Civ. P. 12(b)(6); *see Iqbal*, 556 U.S. at 678–79; *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).  So what happens if a defendant attaches evidence to its motion to dismiss?  A district court generally has discretion over what to do with this evidence.  *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997).  It may exclude the evidence and evaluate the complaint under the standards in Civil Rule 12(b)(6).  *See Cotterman v. City of Cincinnati*, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023).  Or it may consider the evidence and treat the motion as one for summary judgment under Civil Rule 56.  *See id.*; Fed. R. Civ. P. 12(d).

Yet we have also adopted a few exceptions to this default framework.  If a motion to dismiss includes certain categories of outside-the-complaint evidence, a district court may consider the evidence without converting the motion to dismiss into a motion for summary judgment.  *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017); *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  The City Officials claim that their three outside-the-complaint documents fall within two of these evidentiary categories.  They are twice mistaken.

*Category One*: We allow a district court to grant a motion to dismiss based on an outside-the-complaint exhibit if a complaint refers to the exhibit and if the plaintiff's claim depends on it.

*See Stein*, 873 F.3d at 528; *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017). The contrary rule would allow a plaintiff to get a weak claim past the pleading stage merely by failing to attach the exhibit that dooms the claim. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). As the classic example, a plaintiff who asserts a breach-of-contract claim cannot prohibit a district court from considering the whole contract (including the contract terms that undermine the claimed breach) merely by omitting the contract from the complaint. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012). Similarly, a plaintiff who alleges that an officer's affidavit misrepresented a video to obtain a warrant cannot get passed the pleading stage merely by omitting the video from the complaint. *Bailey*, 860 F.3d at 386–87.

Yet the City Officials seek to expand this category too far. They argue that it applies because Blackwell's complaint generically refers to the police investigation and prosecution and because the three exhibits are "central" to his retaliatory-prosecution claim. Appellants' Br. 12 (quoting *Bassett*, 528 F.3d at 430). This argument has two problems. To begin with, Blackwell's claim does not depend on these exhibits. Unlike a breach-of-contract claim whose validity rises or falls with the terms of the "legally dispositive" contract, Blackwell's retaliatory-prosecution claim can succeed no matter what statements Carter put in his police report or what statements the prosecutor put in the complaint. *Carrier Corp.*, 673 F.3d at 442. The claim exists "independent" of the information in these exhibits. *Id.* So it should come as no surprise that Blackwell's complaint did not even "refer[] to" two of the exhibits. *Bassett*, 528 F.3d at 430.

In addition, although contracting parties generally do not dispute the authenticity of a contract, Blackwell disputes many of the statements in these exhibits. If anything, it is more accurate to say that the exhibits are central to the City Officials' *defense*. The police report, for example, suggests that another employee told Chief Strong that Blackwell threatened to slash "Nocerini's tires" after a meeting. Rep., R.15-2, PageID 233. That statement conflicts with the complaint's allegation that Strong obtained "no additional information" from other individuals that the police interviewed. Compl., R.1, PageID 10. The City Officials thus ask us to disregard the normal "presumption of truth" that we must give to a complaint's well-pleaded facts based on their own conflicting story about the investigation. *Carrier Corp.*, 673 F.3d at 442. This approach flouts basic pleading rules. *See Rondigo*, 641 F.3d at 680. In short, Blackwell's claim

does not depend on these exhibits (whose statements Blackwell disputes), so the City Officials cannot rely on this "central-to-the-claim" exception to our normal motion-to-dismiss framework.

*Category Two*: We also allow district courts to take judicial notice of "public records" without converting a motion to dismiss into a summary-judgment motion. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). This exception, though, generally allows a court to conclude only that the record exists; the exception does not allow the court to treat all information in the record as true. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005); *see also Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 397–98 (S.D.N.Y. 2015). At most, courts may take judicial notice of facts in a public record that "are not subject to reasonable dispute"—such as the court's ultimate resolution of a prior case. *Passa*, 123 F. App'x at 697; *see Merswin v. Williams Cos.*, 364 F. App'x 438, 441 (10th Cir. 2010); *cf.* Fed. R. Evid. 201(b). Even then, courts may refuse to consider these facts if they present only part—perhaps a misleading part—of the relevant events. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

Here, it is not clear that two of the exhibits (the police report and timeline) even qualify as "public records" subject to judicial notice at the pleading stage. *Cf. Courser v. Mich. House of Reps.*, 831 F. App'x 161, 170 & n.4 (6th Cir. 2020); *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985); *Eubank v. Wesseler,* 2011 WL 3652558, at *3–4 & n.2 (E.D. Ky. Aug. 19, 2011). But we need not decide this issue because of the way that the City Officials seek to use all three exhibits. They do not want to use the exhibits for a narrow purpose to confirm some undisputed fact— such as the fact that prosecutors charged Blackwell with crimes. Rather, they seek to use the exhibits to establish the "truth" about what Strong and Carter learned during their investigation. *Passa*, 123 F. App'x at 697. But these facts are "subject to reasonable dispute." *Id.*; *see Carrier Corp.*, 673 F.3d at 442 n.6. We thus may not consider them at this time.

B. Did the complaint plausibly plead a clearly established violation of the First Amendment?

The City Officials next argue that Blackwell's complaint did not overcome their qualified-immunity defense to his retaliatory-prosecution claim. This defense required the complaint to allege facts plausibly suggesting that the City Officials violated the First

Amendment and that the law clearly established this violation.  *See Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)); *see also Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466–67 (6th Cir. 2023).  The complaint meets both elements.

1. *First Amendment Violation.*  A retaliation claim under the First Amendment generally requires a plaintiff to establish three things.  *See DeCrane v. Eckart*, 12 F.4th 586, 593 (6th Cir. 2021).  The plaintiff must have engaged in protected speech.  The defendant must have taken an adverse action against the plaintiff.  And the protected speech must have caused that harmful action.  *See Lemaster v. Lawrence County*, 65 F.4th 302, 307 (6th Cir. 2023).

The City Officials do not challenge two of the three elements.  They do not dispute that Blackwell alleged that he engaged in speech protected by the First Amendment when he criticized Nocerini for her management of the city.  *See Rudd*, 977 F.3d at 513–14.  And they do not dispute that the criminal prosecution of Blackwell qualifies as a sufficiently adverse action.  *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022).

Blackwell's claim thus turns on the causation element: Did his complaint plausibly allege that his criticisms of Nocerini caused the City Officials to convince prosecutors to charge him?  This element generally requires that the protected speech be a "'but-for' cause" of the harmful action.  *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).  In most contexts, that "but-for" inquiry asks an easy-to-apply question: Would the defendant still have taken the harmful action if the plaintiff had not spoken?  *Cf. Lemaster*, 65 F.4th at 309–12.

Yet the inquiry gets trickier in the prosecution context.  The Supreme Court has held that prosecutors enjoy absolute immunity from suit under § 1983 for their prosecutorial judgments.  *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  So plaintiffs who claim that they were prosecuted for speech must sue others in the chain of prosecution.  And the actors who take the adverse action (the prosecutors) will generally be different from the defendants who allegedly harbored the retaliatory intent (the investigators who induced the prosecution).  *See Hartman v. Moore*, 547 U.S. 250, 261–63 (2006).  "[T]o bridge the gap" between one person's animus and another's action, the Supreme Court has held that the causation element in this retaliatory-

prosecution context requires plaintiffs to prove that the prosecution lacked probable cause. *Id.* at 263.

We thus must ask whether Blackwell's complaint pleaded allegations plausibly suggesting the "absence of probable cause" for the charges brought against him. *Id.* at 265–66. The Supreme Court has made clear that probable cause does not impose a "high bar" on police or prosecutors. *Wesby*, 583 U.S. at 57 (citation omitted). To initiate a prosecution, the government does not need the same proof for every element of a crime as it would need to get a conviction at trial. *See Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). Rather, the government must identify only a "probability or substantial chance" that the defendant committed the crime. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1164 (6th Cir. 2021) (quoting *Wesby*, 583 U.S. at 57).

The City Officials do not argue that they met this test for the (dismissed-before-trial) charge that Blackwell disturbed a meeting. *See* Mich. Comp. Laws § 750.170. Rather, they argue that the complaint pleads facts suggesting that they had probable cause to charge Blackwell with a misdemeanor stalking offense. *Id.* § 750.411h(2)(a). The Michigan legislature has defined stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to" have such feelings. *Id.* § 750.411h(1)(e). For an action to qualify as "harassment," a defendant must direct the action "toward a victim[.]" *Id.* § 750.411h(1)(d). Such harassing actions can include "repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer" this distress. *Id.* But "constitutionally protected activity" cannot count as harassment. *Id.* A defendant must also engage in a "course of conduct" of prohibited harassment, which means that the defendant must have undertaken "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." *Id.* § 750.411h(1)(a).

Under the complaint's version of events, no "'reasonable and prudent' person" would believe that any of Blackwell's three alleged actions qualified as harassment. *Dibrell*, 984 F.3d at 1164 (quoting *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). Two of those actions occurred

in 2016—years before the City Officials pursued the stalking charge. These actions could not reasonably have caused Blackwell to "suffer emotional distress[.]" Mich. Comp. Laws § 750.411h(1)(d). As for the first, Nocerini once spotted Blackwell driving two cars behind her as she went to work. Compl., R.1, PageID 9. But city hall sits on "a main access road," so many people drive on this road. *Id.* And Nocerini noticed Blackwell behind her only once. As for the second, Blackwell allegedly once watched Nocerini campaign in public and "may have taken photos" of her. *Id.* But it is not unusual for citizens to watch public officials campaign in public spaces. And again, this activity happened only once. Further, the long gap between these 2016 actions and the more recent actions undercuts the claim that Blackwell engaged in a "pattern of conduct" revealing a "continuity of purpose" to harass Nocerini. Mich. Comp. Laws § 750.411h(1)(a); *cf. Blake v. County of Livingston*, 257 F. App'x 848, 852–53 (6th Cir. 2007).

This conclusion leaves Nocerini's concerns that Blackwell more recently gathered "in the parking lot of city hall with other individuals after City Council meetings or while city hall was open for business." Compl., R.1, PageID 9. Yet Blackwell's lawful presence on public property—by itself—is not conduct "directed toward" Nocerini that could qualify as "harassment" under Michigan law. Mich. Comp. Laws § 750.411h(1)(d). And no reasonable person would "suffer emotional distress" from Blackwell's mere presence in a public place. *Id.* In sum, once we accept the complaint's allegations as true, we can understand why the state court allegedly found that Blackwell had not done "anything out of the norm" and that Nocerini could not reasonably "feel emotionally distressed" from his conduct. Compl., R.1, PageID 12.

That said, we need not go as far as Blackwell would to resolve this appeal. He suggests that much of this conduct—for example, taking pictures of a public official or loitering at city hall—qualified as protected First Amendment activity independent of his criticism of Nocerini. *Cf. Clark v. Stone*, 998 F.3d 287, 303 (6th Cir. 2021). If true, the First Amendment and Michigan law would both insulate that conduct from criminal sanction. *See* Mich. Comp. Laws § 750.411h(1)(d); *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997). Yet we can save these First Amendment questions for later. Blackwell's alleged "stalking" conduct would not fall within the state law's definition of "harassment" whether or not the First Amendment protected it. So no reasonable officer could believe that there was a "substantial chance" that Blackwell

had engaged in the stalking of Nocerini.  *Dibrell*, 984 F.3d at 1164 (quoting *Wesby*, 583 U.S. at 57).

Even if the complaint alleged the absence of probable cause, the City Officials respond that it did not plausibly plead that they pursued the stalking charge in retaliation for Blackwell's political speech.  To the contrary, the Supreme Court adopted the lack-of-probable-cause requirement for retaliatory-prosecution claims because of this requirement's "powerful evidentiary significance" in establishing retaliatory animus (and the causal connection between the speech and the prosecution).  *Hartman*, 547 U.S. at 261.  So a complaint that pleads the lack of probable cause goes a long way toward pleading causation.  Further, Nocerini allegedly alerted Strong about Blackwell soon after Blackwell criticized her at the meeting in January 2019.  When combined with the lack of probable cause, this short "time gap" suffices to allege causation at this early stage.  *Lemaster*, 65 F.4th at 310; *see Anders v. Cuevas*, 984 F.3d 1166, 1177–78 (6th Cir. 2021); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 545–46 (6th Cir. 2012).

To rebut the suspicious timing, the City Officials counter that the complaint also asserted that Nocerini complained about Blackwell to the former police chief back in 2018 *before* Blackwell criticized her in January 2019.  Compl., R.1, PageID 7.  They suggest that the protected speech could not have caused Nocerini's attempts to prosecute Blackwell because her efforts began before that speech.  Their argument ignores the complaint's other allegations.  It asserted that Blackwell started to call for Nocerini's termination in 2018 after he obtained the human-resources report about public employment in the city.  *See id.*, PageID 6.  The First Amendment protected this past political speech just as much as it protected the speech in January 2019.  *See Rudd*, 977 F.3d at 513–14.  And the prior police chief's alleged refusal to investigate Blackwell in response to Nocerini's concerns further bolsters the claim that animus drove those concerns.

That brings us to a final point.  Section 1983 does not allow a plaintiff to seek damages from one state actor based on another state actor's constitutional violations.  *See Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876 (6th Cir. 2024); *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934–35 (6th Cir. 2020).  So Blackwell's complaint needed to allege facts that would plausibly connect *each* City Official (Nocerini, Strong, and Carter) to the

alleged First Amendment violation. Yet why would Strong or Carter have a motive to retaliate against Blackwell for his speech since Blackwell's criticisms did not target them? We need not resolve this question because the City Officials' briefing did not adequately differentiate among defendants or ask us to consider the complaint's sufficiency on a defendant-by-defendant basis. They have thus forfeited this argument for this appeal. *See Blick*, 105 F.4th at 876.

2. *Clearly Established Law*. A § 1983 plaintiff who seeks damages from a state actor for a First Amendment violation must show that the state actor violated a "clearly established" right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A right qualifies as "clearly established" only if any "reasonable official" would have recognized that the challenged conduct violated the right. *Wesby*, 583 U.S. at 63 (citation omitted). This test usually requires plaintiffs to identify the right with a "high 'degree of specificity.'" *Id.* (citation omitted). A Supreme Court case in the First Amendment context provides a good example of the required specificity. *See Reichle*, 566 U.S. at 665. When a plaintiff claimed that officers arrested him because of his speech, the Court held that he could not rely on the general right to the "freedom of speech" to rebut their qualified-immunity defense. U.S. Const. amend. I; *see Reichle*, 566 U.S. at 665. Indeed, the plaintiff could not even rely on the caselaw clarifying that this right bars the government from taking adverse actions against people in retaliation for their speech. *See Reichle*, 566 U.S. at 665. Because the police had possessed probable cause for the arrest, the Court instead held that the plaintiff was trying to enforce a "more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.* At the relevant time, however, the Court had never held that this specific right existed. *See id.*; *see also Hall v. Navarre*, 118 F.4th 749, 760 (6th Cir. 2024). And the Court has since disavowed such a right. *See Nieves*, 587 U.S. at 401–06.

What is the appropriate level of generality in Blackwell's case? We see room for debate on this question. On the one hand, recall that his retaliatory-prosecution claim requires him to prove the absence of probable cause. *See Hartman*, 547 U.S. at 265–66. Because probable cause turns on the totality of the circumstances, officers often will struggle over how this "general standard" applies to specific facts. *Wesby*, 583 U.S. at 64. When considering search-or-seizure claims under the Fourth Amendment, then, a plaintiff who seeks to show the violation of a clearly established right must usually identify cases that found a lack of probable cause in

similar circumstances. *See id.*; *Jones v. Naert*, 121 F.4th 558, 568 (6th Cir. 2024). Plaintiffs can avoid this requirement to identify similar caselaw only in "the rare 'obvious case'" in which any reasonable officer would have recognized the absence of probable cause. *Wesby*, 583 U.S. at 64 (citation omitted). Now that the Court has incorporated a probable-cause element into this First Amendment context, one might argue that retaliatory-prosecution plaintiffs must likewise identify factually similar probable-cause caselaw. And Blackwell's briefing did not even attempt to do so.

On the other hand, retaliatory-prosecution claims under the First Amendment differ from Fourth Amendment claims in a material way. The Fourth Amendment generally adopts an objective test that renders an officer's motives for an action irrelevant. *See Nieves*, 587 U.S. at 403. A First Amendment retaliatory-prosecution claim, by contrast, requires plaintiffs to prove more than the absence of probable cause. This claim also requires a defendant to have harbored a "retaliatory motive" for a prosecution. *See Hartman*, 547 U.S. at 261. That officers must have acted with "subjective animus" in the First Amendment context reduces the concern that they will not know that their conduct violates the law. *Nieves*, 587 U.S. at 401. So perhaps plaintiffs should have to prove only that the officers harbored this retaliatory intent and that they acted without probable cause (without the need to identify similar probable-cause cases). *Cf. Novak*, 932 F.3d at 430. After all, wouldn't any officer "immediately" recognize the "unlawfulness" of pursuing a prosecution for the purpose of punishing speech protected by the First Amendment? *Wesby*, 583 U.S. at 64 (citation omitted). The Supreme Court has recognized the illegality of this conduct since *Hartman* in 2006. *See Everson v. Calhoun County*, 407 F. App'x 885, 887 (6th Cir. 2011).

In the end, though, we need not resolve this debate at this stage given that we must accept the complaint's allegations. If those allegations are true, the City Officials could not seek qualified immunity even under the more defendant-friendly test. It would have been "obvious" to any reasonable officer that the three incidents that allegedly led the City Officials to pursue charges against Blackwell did not establish probable cause that he had engaged in stalking. *Wesby*, 583 U.S. at 64 (citation omitted); *cf. Barton v. Neeley*, 114 F.4th 581, 591–93 (6th Cir. 2024). So Blackwell did not need to identify analogous probable-cause caselaw to get past the

pleading stage.    And we can save for another day whether he must do so at the summary-judgment stage.

We affirm.